ALUMET, Appellee,

v.

Cecil D. ANDRUS et al., Appellants.

No. 78–1546.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted March 14, 1979.

Decided Oct. 4, 1979.

**912**

L. Charles Johnson, Pocatello, Idaho (Johnson & Olson, Pocatello, Idaho, on the brief), for appellee.

Francis M. Shea, Washington, D. C. (Richard T. Conway, James R. Bieke, Shea & Gardner, Washington, D. C., Bryant O'Donnell, James R. McCotter, Kelly, Stansfield & O'Donnell, Denver, Colo., Paul L. Jauergui, Boise, Idaho, Richard D. Bach, Rives, Bonyhadi & Smith, Portland, Or., William H. Coldiron, John W. Ross, Butte, Mont., John R. Bury, and Tom Gilfoy, Rosemead, Cal., on the brief), for Public Service Co. of Colorado, Idaho Power Co., The Montana Power Co., Pacific Power & Light Co. and Southern California Edison Co., amici curiae, in support of appellee.

Peter R. Steenland, Jr., Washington, D. C. and Neil T. Proto, Dept. of Justice, Sanford Sagalkin, Deputy Asst. Atty. Gen., and Paul Smyth, Dept. of the Interior, Washington, D. C., for appellants.

Before McWILLIAMS, BREITENSTEIN and DOYLE, Circuit Judges.

McWILLIAMS, Circuit Judge.

This is an appeal from a judgment which held that the Bureau of Land Management (BLM) does not have the authority to require a private party to reimburse BLM for *any* part of the cost of an environmental impact statement prepared in connection with the processing of an application for a right-of-way over public lands.

Alumet is a partnership and joint venture composed of three partners: National Steel, a Delaware corporation; Southmore, a Georgia corporation; and Earth Sciences, a Colorado corporation. Alumet is engaged in various mining operations in the states of Utah and Idaho. We are here concerned with a proposed 500 million dollar project undertaken by Alumet (the Alumet Project) involving development of an alunite mine, a processing plant complex and related rights-of-way in Beaver County, Utah, all on public lands belonging to the United States.

More specifically, in 1973 Alumet made application to BLM for preference right leases for approximately 14,000 acres, which included a proposal for mining and processing. At that time Alumet had not made any request for rights-of-way. In January, 1974, BLM determined that under the National Environmental Policy Act, 42 U.S.C. § 4321, *et seq.*, an Environmental Impact Statement (EIS) had to be prepared. Although in the earlier stages of this dispute between Alumet and BLM there appears to

have been some claim by BLM that it was entitled to reimbursement for the cost of preparing the EIS in connection with Alumet's lease application, such is not, a part of the present controversy. In this Court, BLM agrees that it is not entitled to any reimbursement for the cost of that part of the EIS relating to Alumet's overall lease application, but rather presently seeks reimbursement for only those EIS costs associated with the application for rights-of-way which would be used in connection with the proposed lease of federal lands.

On September 5, 1975, Alumet filed applications for rights-of-way through public land for power and communication facilities in Beaver County, Utah to be used in connection with the Alumet Project. These rights-of-way are necessary for the construction and operation of electrical transmission lines, water pipelines, and telephone lines in support of the mining operations. Following the filing of these applications, BLM made no "separate" decision to prepare an EIS. It was BLM's position that its previous decision to prepare an EIS for the Alumet Project encompassed the subsequent application for rights-of-way in that the requested rights-of-way were merely an extension of the total project. In any event, an EIS was prepared covering the entire Alumet Project, including the requested rights-of-way.[1] BLM demanded payments from Alumet which included, *inter alia*, the projected cost estimate of the EIS. Certain payments were made by Alumet under protest. Later Alumet brought the present declaratory judgment proceeding against the Secretary to determine which costs incurred by BLM, if any, could be properly charged against Alumet by way of a reimbursement claim.

As indicated earlier, BLM now makes no claim that it is entitled to reimbursement for the cost of the EIS relating to Alumet's overall lease applications. Rather, BLM appeals the judgment of the trial court which held that BLM had no right to reimbursement for *any* portion of the cost of the EIS prepared in connection with the processing of Alumet's application for rights-of-way.

Before considering the judgment of the trial court, reference to applicable statutes and agency regulations should serve to place the present controversy in context. Actually, the starting point is the Constitution itself, Article IV, Section 3, clause 2, which provides as follows:

> The Congress shall have power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States.

Based on this constitutional authority, Congress enacted the Federal Land Policy Management Act (FLPMA). 43 U.S.C. § 1701, *et seq.* The effective date of that Act was October 21, 1976, at a time when Alumet's application for rights-of-way was pending before the BLM.

43 U.S.C. § 1764(g) provides as follows:

> § 1764. General requirements—Boundary specifications; criteria; temporary use of additional lands
>
> \*      \*      \*      \*      \*      \*
>
> Rental payments; amount, waiver, etc.
>
> (g) The holder of a right-of-way shall pay annually in advance the fair market value thereof as determined by the Secretary granting, issuing, or renewing such right-of-way: *Provided,* That when the annual rental is less than $100, the Secretary concerned may require advance payment for more than one year at a time: *Provided further,* That the Secretary concerned may waive rentals where a right-of-way is granted, issued, or renewed in reciprocation for a right-of-way conveyed to the United States in connection with a cooperative cost share program between the United States and the holder. *The Secretary concerned may, by regulation or prior to promulgation of such regulations, as a condition of a right-of-way, require an applicant for or holder of a*

---

1. At this time the Secretary has not made any final determination concerning EIS costs attributable only to the rights-of-way.

*right-of-way to reimburse the United States for all reasonable administrative and other costs incurred in processing an application for such right-of-way and in inspection and monitoring of construction, operation, and termination of the facility pursuant to such right-of-way:* Provided, however, That the Secretary concerned need not secure reimbursement in any situation where there is in existence a cooperative cost share right-of-way program between the United States and the holder of a right-of-way. (Emphasis added.)

43 U.S.C. § 1734(b) provides as follows:

§ 1734. Fees, charges, and commissions—Authority to establish and modify

\*   \*   \*   \*   \*   \*

Deposits for payments to reimburse reasonable costs of United States

(b) The Secretary is authorized to require a deposit of any payments intended to reimburse the United States for reasonable costs with respect to applications and other documents relating to such lands. The moneys received for reasonable costs under this subsection shall be deposited with the Treasury in a special account and are hereby authorized to be appropriated and made available until expended. *As used in this section "reasonable costs" include, but are not limited to, the costs of special studies; environmental impact statements; monitoring construction, operation, maintenance, and termination of any authorized facility; or other special activities.* In determining whether costs are reasonable under this section, the Secretary may take into consideration actual costs (exclusive of management overhead), the monetary value of the rights or privileges sought by the applicant, the efficiency to the government processing involved, *that portion of the costs incurred for the benefit of the general public interest rather than for the exclusive benefit of the applicant,* the public service provided, and other factors relevant to determining the reasonableness of the costs. (Emphasis added.)

43 U.S.C. § 1740 provides as follows:

§ 1740. Rules and regulations

The Secretary, with respect to the public lands, shall promulgate rules and regulations to carry out the purposes of this Act and of other laws applicable to the public lands, and the Secretary of Agriculture, with respect to lands within the National Forest System, shall promulgate rules and regulations to carry out the purposes of this Act. The promulgation of such rules and regulations shall be governed by the provisions of chapter 5 of Title 5, without regard to section 553(a)(2). *Prior to the promulgation of such rules and regulations, such lands shall be administered under existing rules and regulations concerning such lands to the extent practical.* (Emphasis added.)

The Secretary in 1975 promulgated the following regulation which now appears as 43 C.F.R. § 2802.1–2:

§ 2802.1–2 Reimbursement of costs.

(a)(1) An applicant for a right-of-way or a permit incident to a right-of-way shall reimburse the United States for administrative and other costs incurred by the United States in processing the application, including the preparation of reports and statements pursuant to the National Environmental Policy Act (42 U.S.C. 4321–4347), before the right-of-way or permit will be issued under the regulations of this part.

Shortly after the enactment of FLPMA, Secretarial Order No. 3011 was issued (42 Fed.Reg. 55280) which provides as follows:

Sec. 1 *Purpose.* The purpose of this Order is to implement the cost of recovery provisions of FLPMA, Sections 304 and 504(g), 43 U.S.C. 1734, 1764(g) (Supp. 1977), as to applications for monitoring of rights-of-way over the public lands.

Sec. 2 *Implementation.* \*  \*  \* The regulations at 43 C.F.R. 2802.1–2 (1976) shall be applicable to such applications or holder monitoring activity until new regulations implementing Title V of FLPMA become final. It is my finding that "reasonable costs" under Section 304 of FLPMA for processing applications for

rights-of-way over public lands and for monitoring right-of-way holder activity, are the actual costs incurred by the United States in performing statutory responsibilities necessitated by such applications or rights-of-way. The term "reasonable costs" means the same as the term "administrative and other costs" as used in the regulations at 43 C.F.R. 2802.1–2(a)(1) (1976), and includes costs incurred in preparation of environmental impact statements.

Sec. 7 *Effective Date.* This Order is effective immediately. Its provisions shall remain in effect until regulations are promulgated implementing Title V of FLPMA, or until it is amended, superceded, or revoked, whichever occurs first.

In the order granting Alumet's motion for summary judgment, the trial court first rejected BLM's argument that 43 C.F.R. § 2802.1–2, which provides that the Secretary may seek reimbursement for costs incurred by BLM in the processing of an application for a right-of-way, including the costs of preparing an EIS, before any right-of-way be issued, was a valid exercise of agency authority under three prior acts of Congress, namely, (1) The Independent Offices Appropriation Act, 31 U.S.C. § 483a; (2) the Public Land Administration Act, 43 U.S.C. § 1371 and § 1374; and (3) the 1973 amendments to the Mineral Leasing Act, 30 U.S.C. § 185(c)(1).[2] In this Court BLM has abandoned any reliance on those three Acts and relies totally on FLPMA.

In the order granting Alumet's motion for summary judgment, the trial court considered, and rejected, the argument that, under FLPMA, BLM was entitled to reimbursement from Alumet for the cost of preparing the EIS as it pertained to the processing of Alumet's application for rights-of-way, and the court held that *no* part of such expense could be charged to Alumet. In so holding we conclude the trial judge erred.

As concerns the applicability of FLPMA to the present case, the trial judge rejected Alumet's argument that the enactment of FLPMA in a sense "repealed" all prior legislation and regulations dealing with right-of-way applications, and that accordingly, there were *no* rules regarding costs and reimbursement therefor since the Secretary had not thereafter promulgated new regulations regarding right-of-way applications. In this regard the trial judge noted that 43 U.S.C. § 1740 provided that prior to the promulgation of any new rules or regulations, public lands should be administered under existing rules and regulations to the fullest extent possible. The trial judge observed that "the legislative intent is clear and the court sees no compelling reason to depart therefrom." We agree.

After holding that FLPMA was applicable to the present case, the trial judge went on to conclude, however, that notwithstanding the fact that § 1734(b) of FLPMA provides that reasonable costs, including the cost of preparing an EIS may be charged against an applicant for a right-of-way, nonetheless *no* part of the cost incurred by BLM in preparing the EIS in connection with the processing of Alumet's application for right-of-way could be charged against Alumet. In thus deciding, the trial court held that under *National Cable Television Ass'n, Inc. v. United States,* 415 U.S. 336, 94 S.Ct. 1146, 39 L.Ed.2d 370 (1974) and *Federal Power Commission v. New England Power Co.,* 415 U.S. 345, 94 S.Ct. 1151, 39 L.Ed.2d 383 (1974), assessable costs were limited to those costs which represented "value to the recipient," and that the preparation of the EIS in the instant case represented a benefit to the general public, and was of no benefit to Alumet.

*National Cable* and *New England Power* were both concerned with The Independent Offices Appropriation Act. A primary purpose behind that Act was to make federal agencies more self-supporting by in-

**2.** See *Public Serv. Co. of Colo. v. Andrus,* 433 F.Supp. 144 (D.Colo.1977). That case served as the basis for the trial court's holding in the instant case that 43 C.F.R. § 2802.1–2 was not authorized by any of those three Acts.

creasing the fees theretofore charged persons for work performed by a federal agency to or for such person. In *National Cable* the Federal Communications Commission sought to impose a license fee which was, in part, tied to the number of subscribers of a particular cable television company. In other words, the annual fee included a charge at the rate of 30¢ for each individual subscriber. In *New England Power* the Federal Power Commission sought to impose a fee based, in part, on the amount of wholesale sales and interchange of electricity, which amounted to 0.14% of net income derived from such sales and interchange. In each case the Supreme Court set aside the fee sought to be imposed and while neither case dealt with the Congressional administration of public lands nor with language as express as that found in FLPMA, *National Cable* and *New England Power* each emphasized that, absent the delegated authority to tax, the "value to the recipient" standard shall be applied to limit the [Secretary] to the collection of "fees." Clearly, FLPMA is an express legislative mandate that all reasonable costs incurred by the Secretary in processing an application for rights-of-way on public lands shall be chargeable against the applicant for such rights-of-way, and further, that "reasonable costs" include, among other things, the costs of environmental impact statements. We shall assume that Congress was aware of its limitations in delegating the authority to "tax." The language of § 1734(b) reflects that understanding in that Congress expressed that the Secretary should consider the benefit to the general public in its attempted recoupment of costs of an EIS. To hold that, as a matter of law, an EIS inures solely to the benefit of the general public, and therefore, no part is assessable to the applicant, is error.

■ An alternative reason given by the trial court for its action was based upon the statutory language of 43 U.S.C. § 1734. That statute first provides that the "reasonable costs" which may be charged against the applicant for a right-of-way over public lands include the cost of any environmental impact statement prepared and used in connection with the BLM's processing of such application. Stopping at that point in the statute, it would appear that Congress quite clearly intended that the cost of preparing such an environmental impact statement would be borne by the applicant for the right-of-way. Admittedly, the statute in question goes on in a succeeding sentence to provide that in determining what costs are "reasonable" costs, the Secretary may take into consideration, among other things, "that portion of the costs incurred for the benefit of the general public interest rather than for the exclusive benefit of the applicant."

The trial court reasoned that the latter statutory provision which allowed the Secretary to exclude that portion of the costs incurred for the benefit of the general public *completely negated* the former provision in the same statute that reasonable costs included the cost of an environmental impact statement. We are not in accord with such reasoning. If such were a proper construction, then the statement that reasonable costs include the cost of an environmental impact statement is meaningless. The latter statutory provision that the Secretary may consider that portion of the costs incurred for the benefit of the general public interest may well *modify* the earlier provision that reasonable costs include cost of an environmental impact statement, but the latter provision does not, in effect, excise the former provision from the statute.

In sum, the trial court in granting summary judgment, ruled that the Secretary had no authority to seek reimbursement from Alumet for *any* part of the cost of preparing an environmental impact statement incident to Alumet's application for a right-of-way over public lands. In our view, such holding is erroneous.

Judgment reversed and case remanded for further proceedings consonant with the views herein expressed.