UNITED STATES of America

v.

Scott FRANZ.

No. 88 CR 0455.

United States District Court,
N.D. Illinois, E.D.

Aug. 26, 1988.

Anton Valukas, U.S. Atty., N. Dist., Jeffery Stone, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

James R. Epstein, Epstein, Zaidman & Esrig, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

The defendant here challenges the sentencing guidelines put forth by the United States Sentencing Commission under the authority of the Sentencing Reform Act of 1984 (28 U.S.C. § 991 *et seq.*). This court is obliged to sentence this defendant in accordance with the guidelines (18 U.S.C. § 3551 *et seq.*) unless doing so would violate the Constitution. In his behalf defendant has, with leave of court, adopted as his own the arguments advanced by Joseph Patrick Eastland in *United States v. Eastland,* 694 F.Supp. 512 (N.D.Ill.1988). Most of the arguments offered will be addressed by the Supreme Court in *United States v. Mistretta,* and *Mistretta v. United States,* — U.S. ——, 108 S.Ct. 2818, 100 L.Ed.2d 920 (1988).

Accordingly, I express my views in summary fashion without detailed analysis of the precedents I have considered.

### I.

Congress enacted the Sentencing Reform Act of 1984 to the end that sentencing for all federal crimes be reformed. The primary instrument of reform is the United States Sentencing Commission, "an independent commission in the judicial branch of the United States" (28 U.S.C. § 991(a)). Its seven members are appointed by the President and by him removable only for good cause. Three of these members are to be federal judges occupying offices created under Article III of the Constitution, and they were selected for appointment by the President from a list of six judges recommended by the Judicial Conference of the United States. The Commission's guidelines significantly constrict the discretion of the sentencing judge. Permissible sentences are set forth in a Sentencing Table, and the difference between the lowest and highest sentence is usually within a range of twenty-five percent. The availability of probation is lessened in comparison to past practice. A court may depart from the guidelines only when it finds a factor relevant to sentencing "was not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines", 18 U.S.C. § 3553(b).

### II.

■ Defendant says that Congress delegated to the Sentencing Commission a power it must keep to itself and, even if that is not so, Congress erred in giving too little guidance to govern the Commission's exercise of that power.

Delegations of authority from Congress to governmental commissions have rarely been found unconstitutional. The two successful challenges to Congressional delegation occurred fifty-three years ago. *Panama Refining Co. v. Ryan,* 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935); *Schecter Poultry Corp. v. United States,* 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935). Though dated, the decisions are not obscure. The *Schecter* case and its graceless nickname are known by any who complete a course in constitutional law.

In *United States v. Brodie,* 686 F.Supp. 941, 1 Fed.Sent.R. 14, 20 (D.D.C.1988) Judge Greene accepted the claim that Congress could not delegate in any way its power to sentence for crimes. He recognized that delegations to regulatory agencies are generally valid because "the economy has become so complex and technical and scientific problems have become so unintelligible to the layman, educated or not,

that regulation by ... agencies and ... commissions has become indispensable [;] ... complex economic life ... could not receive the requisite governmental support and scrutiny that it deserves, and safety, consumer confidence and financial stability ... would be undermined if ... commissions were to be struck down on improper delegation grounds." Then he wrote:

> Here, unlike in almost all the prior instances of delegation of legislative power, the matters being delegated involve not the regulation of economic forces and factors but basic policy decisions of law enforcement, of criminal control and of punishment. That this is a difference in quality and kind is obvious.

Not to all.

Congress has properly delegated the power to define crimes. *United States v. Grimaud,* 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563 (1911); *United States v. Sharpnack,* 355 U.S. 286, 78 S.Ct. 291, 2 L.Ed.2d 282 (1958). And reasonable persons might dispute that choices vital to the people's physical safety and economic welfare are somehow not "basic policy decisions." As to the technical competency of Congress to cope with all of the problems of criminal setencing, that is a judgment best left to Congress itself. Deciding questions of Congressional authority to delegate on the basis of one's perception of which decisions are basic and which are too complex for Congress is unwise, and I decline to do so.

■ There remains the claim that the authority was delegated without adequate guidance to the Commission.

What Congress told the Commission is this:

It was to develop determinate guidelines to be used by federal courts in sentencing, which guidelines were to "provide certainty and fairness in meeting the purposes of sentencing" while "avoiding unwarranted sentencing disparities among defendants

with similar records who have been found guilty of similar criminal conduct" and "maintaining sufficient flexibility to permit individualized sentences" 28 U.S.C. § 991(b)(1)(B) (Supp.III).

The Commission was to address the questions of whether or not probation, fine or imprisonment; what fine, probation or imprisonment, whether imprisonment be followed by a term of supervision; and whether multiple sentences should be concurrent or consecutive. 28 U.S.C. § 994(a)(1)(A).

The guidelines must devise categories for offenses and offenders and define a sentencing range for each category of offender and offense, 28 U.S.C. § 994(b). Limits were set. The ranges could not be inconsistent with existing statutory sentence provisions for offenses (28 U.S.C. § 994(b)), and the ranges could not vary by more than the greater of six months or 25% from the minimum to the maximum sentence. 28 U.S.C. § 994(b)(2).

The Commission was directed to start with the average current sentences for offenses in developing the ranges. It was instructed to consider seven specific factors in establishing categories of offenses [1], and eleven specific factors in establishing categories of offenders.[2] Neither list of factors is exclusive since the Commission is to consider them "among others", 28 U.S.C. § 994(c), (d). Factors such as race and sex were not to be considered by the Commission. 28 U.S.C. § 994(e).

The guidelines Congress said should (a) require imprisonment "at or near the maximum authorized" for certain offenses and a "substantial term" of imprisonment for others, (b) recognize the general inappropriateness of imposing imprisonment upon first offenders whose crimes are neither serious nor violent, (c) recognize propriety of imprisonment for violent offenses resulting in serious bodily injury, (d) reflect the

---

**1.** Offense grade, mitigating/aggravating circumstances, harm caused by the offense, community views of the offense's gravity, public concern generated by the offense, deterrence of others by particular sentences and the current frequency of the offense. 28 U.S.C. § 994(c).

**2.** Age, education, vocational skill, mental and emotional condition, physical condition, employment record, family ties and responsibilities, community ties, role in the offense, criminal history and degree of dependence on crime for a livelihood. 28 U.S.C. § 994(d).

inappropriateness of imprisonment for rehabilitative purposes, and (e) provide for leniency to offenders giving substantial assistance to the investigation of the offense. *See* 28 U.S.C. § 994(h), (i), (j), (k), (n).

The Supreme Court has said that a valid delegation of authority must be accompanied by "an intelligible principle to which a person or body authorized ... is directed to conform." *National Cable Television Assn, Inc. v. United States,* 415 U.S. 336, 342, 94 S.Ct. 1146, 1150, 39 L.Ed.2d 370 (1974). Just how precise this intelligible principle must be is discerned from the course of decisions sustaining delegations. *Lichter v. United States,* 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694 (1948) (standards to permit "recovery of excessive profits"); *Federal Power Commission v. Hope Natural Gas Co.,* 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333 (1944) (rates for natural gas to be "just and reasonable"); *National Broadcasting Co. v. United States,* 319 U.S. 190, 63 S.Ct. 997, 87 L.Ed. 1344 (1943) (radio licenses to be issued as required by "public interest, convenience or necessity"); *Sunshine Anthracite Coal Co. v. Adkins,* 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263 (1940) (maximum price for coal set "when in the public interest").

█ By comparison, the principles given to the Commission to guide it are quite comprehensive. The argument that they could have been more comprehensive is of no legal moment. There is no principle of law that Congress shall delegate as little authority and discretion as possible. It is true that Congress refused to specify which of four penological theories[3] it recognized should govern the Commission's view, but the refusal to so specify is itself a decision that the Commission must consider all four purposes as less or more appropriate to specific instances. Congress may create and empower the Federal Reserve Board without first deciding if Keynes is right.

In light of the history of the delegation doctrine it is not surprising that defendants' delegation argument should fail—it is mildly surprising that defendant should offer it. Under the present system under which defendant desires to be sentenced Congress has delegated to the courts a broader discretion, with fewer guiding principles than it gave the Commission.

## III

█ On grounds of due process defendant claims the guidelines are unconstitutional since they unduly restrict judicial discretion in imposing sentence. The argument may be founded on the limited nature of the range between minimum and maximum sentence—the greater of 25% or six months; or upon the claimed exclusion of defendant's age, alcohol usage, education and similar factors from consideration on sentencing.

Narrowing the range of possible sentences or factors to be considered at sentencing does not offend due process. It is a prevailing feature of nearly all criminal codes. And this has been so for centuries, *United States v. Grayson,* 438 U.S. 41, 45, 98 S.Ct. 2610, 2613, 57 L.Ed.2d 582 (1978). A policy argument could be made for setting sentences of all felonies at zero to life and allowing the sentencer[4] to select, in light of everything, the best number but the argument would have no constitutional force. *Lockett v. Ohio,* 438 U.S. 586, 604–05, 98 S.Ct. 2954, 2964–65, 57 L.Ed.2d 973 (1978). Were this not so the mandatory minimum terms of imprisonment set forth by Congress would not have survived as they have. *United States v. Goodface,* 835 F.2d 1233, 1236 (8th Cir.1987). The defendant makes no Eighth Amendment claim though there is, in death penalty cases, a rule which supports the claim that all individual circumstances be considered. *See Franklin v. Lynaugh,* —— U.S. ——, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988). The Court, however, has never applied this rule in a non-capital case.

---

**3.** These are, in essence, retribution, deterrence, incapacitation, and rehabilitation.

**4.** The sentencer need not be a court, but might be a parole board. *Williams v. New York,* 337 U.S. 241, 248, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949).

It ought also to be clear that, under the guidelines, individualized sentencing has not been abolished. Much discretion remains. The guidelines depend upon a careful analysis of the nature of the offense and the offender's role in it. The criminal history of the offender is to be considered. And even after the applicable range is settled the discretion permitted within the range is at least 25% between the highest and lowest sentence, and in the exercise of that discretion the court may consider anything. Finally, courts may depart from the guideline sentences under conditions set forth by the Commission and whenever a relevant circumstance was not adequately considered by the Commission. Discretion is limited, not obliterated, and, to the extent that such limitation reduces sentencing disparity it serves a laudable purpose with a constitutional foundation at least as strong as the defendant's shaky due process claim.

### IV

The Constitutional separation of powers is not offended by the United States Sentencing Commission or its guidelines.

The defendant's argument is simple. Congress makes law, the President executes law, the Courts apply law or, more precisely, the Judges apply law. The Sentencing Commission makes law and therefore cannot be part of the judicial branch. Judges sit on the Sentencing Commission, and this is improper too. The argument seems to rest upon the premise that the three branches exercise powers that never overlap—that there is a complete division of authority. The premise is usually disavowed by the Supreme Court, *Nixon v. Administrator of General Services*, 433 U.S. 425, 443, 97 S.Ct. 2777, 2790, 53 L.Ed. 2d 867 (1977).

The distinctions between making, executing and applying law are slippery. General agreement on rigorous definitions of the three concepts has not been achieved, and absent such an agreement it is impossible to use the language effectively in resolving this case. Moreover, the Constitution is written to allocate power and not specific functions. While power is defined or manifested by the exercise of tasks, it is useful to bear in mind the more general idea of power. By doing so it is easier to understand why there are two ways the Supreme Court has looked at separation issues.

■■■■ When one branch of government seeks to exercise power belonging to another, to increase it own power, the Court considers the act to be prohibited by the separation doctrine. *See Morrison v. Olson*, — U.S. —, 108 S.Ct. 2597, 2616, 101 L.Ed.2d 569 (1988). Absent the attempt by one branch to increase its power by taking power of another branch, the application of separation of powers doctrine is rarely rigid and does depend upon an analysis of the specific functions assigned to the branches rather than general questions of power. The issue was so addressed in *Morrison v. Olson*, 108 S.Ct. at 2621–22.[5]

Judges pass sentence. The act is one of those which define the office. That Congress would choose to create an independent commission within the judicial branch is not surprising. The choice is no more unconstitutional than the choice to give the judicial branch the power to promulgate rules of procedure. The judicial branch already contains the Administrative Office, the Probation Service, the Federal Judicial Center, the Judicial Conference, and the Circuit Councils. Neither administration

---

**5.** *See* Hughes, C.J. in *Crowell v. Benson*, 285 U.S. 22, 56–57, 52 S.Ct. 285, 294–95, 76 L.Ed. 598 (1932):

The recognition of the utility and convenience of administrative agencies for the investigation and finding of facts within their proper province, and the support of their authorized action, does not require the conclusion that there is no limitation of their use and that Congress could completely oust the courts of all determinations of fact by vesting the authority to make them with finality in its own instrumentalities or in the Executive Department. That would be to sap the judicial power as it exists under the Federal Constitution and to establish a government of a bureaucratic character alien to our system, wherever fundamental rights depend, as not infrequently they do depend, upon the facts and finality as to facts becomes in effect finality in law.

nor rulemaking are forbidden to the judicial branch.

At least since *Sibbach v. Wilson & Co.,* 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479 (1941) it is clear that Congress could delegate to courts its power to regulate the practice and procedure of federal courts. The rules issued under the Rules Enabling Act of 1934 have the force of law. 28 U.S.C. § 2072.

■ The governing principle, it seems to this Court, is that Congress may delegate its rule making power to a judicial branch commission if that power is to be exercised to aid or improve the administration of courts or resolution of cases and controversies. *See Chandler v. Judicial Council,* 398 U.S. 74, 90 S.Ct. 1648, 26 L.Ed.2d 100 (1970); *In re Matter of Certain Complaints,* 783 F.2d 1488 (11th Cir.1986).

■ The Sentencing Commission's purpose to give rational guidance to discretion and reduce disparity in sentencing serves to assist and improve the work of the courts. The fact that reasonable persons may conclude that the Commission did an unsatisfactory job is of no significance. The Rules Enabling Act is not invalid because reasonable persons may find that a rule or the rules have made things worse rather than better.

The Sentencing Commission guidelines, like rules of procedure, do affect the results of cases but not by creating rights and obligations applicable to the public, the usual effect of legislation. Rather, the guidelines obligate judges to exercise discretion in certain ways in determining sentence—the remedy in a criminal case which results in conviction. Decision of this matter requires the exercise of judgment and one might reasonably find the Guidelines to be legislation as some have believed of the Federal Rules of Civil and Criminal Procedure despite the fact that Congress has the

final word on all of it. In my judgment of the specific matter before me, I find the guidelines, like the rules of procedure have substantial effects on cases, but they are rules for judges, not the public, and it is not an exercise of unjudicial power to issue them.

■ The presence of Article III judges on the Commission is not unconstitutional. These judges serve voluntarily.[6] The Constitution does not prohibit it, and history provides several examples of judges serving on commissions. *See Matter of President's Commission on Organized Crime (Scarfo),* 783 F.2d 370, 376–78 (3d Cir.1986); *Application of President's Commission on Organized Crime (Scaduto),* 763 F.2d 1191, 1202–03 (11th Cir.1985). The Congress has not placed any duties upon any courts, but rather upon willing judges as individuals. This is permissible. *See United States v. Ferreira,* 54 U.S. (13 Haw.) 40, 14 L.Ed. 40 (1851). *Compare Morrison v. Olson,* 108 S.Ct. 2597 (1988) (sustaining assignment of executive functions to a court itself not merely to individual judges). Moreover, these duties are in aid of the operation of the judicial branch as are the duties of judges who serve (in some cases by statutory direction) on the Judicial Conference and the Circuit Judicial Councils. Service of three circuit judges on the Sentencing Commission will not impair the independence or work of the judiciary. At most, the judiciary will lose the services of three judges of inferior courts who may recuse themselves in cases challenging the guidelines. Other judges are readily available to sit in their places and caseloads can be equalized.

■ The President's power to remove commissioners for good cause does not defeat the validity of Congress's actions. The Commission does not adjudicate cases,

---

**6.** Defendant makes no argument based on the Code of Judicial Conduct presumably because a violation of the Canons may have relevance only to a commissioner's service as a judge not as a commissioner. The Canon gives no clear guidance. Canon 5 G permits service on governmental commissions concerned with the improvement of the law or the administration of

justice. Indeed service on commissions with different concerns is permitted where "appointment of a judge is required by Act of Congress." On the other hand, appointments are to be refused if governmental duties "would interfere with the performance of ... judicial duties." The record is barren of evidence on this question.

it is not a court and thus its members may be removed. The Commission's subject matter is sentencing, power over which has been exercised by all three branches of government. *Geraghty v. United States Parole Commission,* 719 F.2d 1199 (3rd Cir.1983) (executive determination of release dates). It does not violate the separation doctrine to allocate to the executive the right to select and remove commissioners particularly where the removal powers are restricted by good cause requirements. *See Humphrey's Executor v. United States,* 295 U.S. 602, 55 S.Ct. 869, 79 L.Ed. 1611 (1935). The President cannot, even with good cause, remove the commissioner from his or her judgeship. To the extent independence is thought to be threatened by the lure of Presidential appointment or reappointment to the Commission, this danger seems speculative. Neither the drafters of the Constitution, who sought to protect judicial independence, nor Congress ever precluded presidential appointment of lower court judges to higher courts.

 The majority of commissioners are not judges, but this does not violate the separation of powers. Were the Commission to have the duties of a court the presence of non-judges would be unauthorized. It is quite clear that the Commission does not do what a court does—its guidelines affect the course of decision, but so too do the acts of other branches of government. Since the Commission is not an Article III court the six year tenure of each commissioner does not contravene Article III's guarantee of life tenure.

Each branch of our national government has a legitimate and historical involvement with the question of criminal sentences. Subject to constitutional constraints, such as the law on cruel and unusual punishment, Congress has the final say on what sentences are to be. Congress did have the right to delegate its authority with guiding principles to the judicial branch, to the executive branch, or an independent agency. Having found that delegation to a commission in the judicial branch is lawful, there is no need to decide whether the phrase "in the judicial branch" can be severed to give the statute a saving construction. Nor is it necessary to decide, as is likely the case, whether the President's removal power can be severed? *See Alaska Airlines, Inc. v. Brock,* 480 U.S. 678, 107 S.Ct. 1476, 94 L.Ed.2d 661 (1987). There is a claim that the guidelines have not taken effect because the commission did not timely comply with its reporting obligations to Congress, P.L. No. 98–473, *See* 235(a)(1)(B)(ii) as amended. The Commission's timely submission of its guidelines and the rationale for them constitutes the report required by Congress. The complaint about the adequacy of the GAO report and Congress's review of it are beyond the standing of defendant to raise and the authority of this Court to consider.

For the reasons stated above, the defendant's motion to preclude sentence under the guidelines is denied.