**UNITED STATES of America, Plaintiff,**

v.

**Joseph Patrick EASTLAND, Defendant.**

**No. 87 CR 948.**

United States District Court,
N.D. Illinois, E.D.

Sept. 8, 1988.

Lisa Huestis, Barry Eldon, Asst. U.S. Attys., Chicago, Ill., for plaintiff.

Carol A. Brook, Lauren Weil, Federal Defender Program, Chicago, Ill., Terence F. MacCarthy, Executive Director, for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Currently before the Court is Joseph Patrick Eastland's motion to declare the new Sentencing Guidelines unconstitutional. For the reasons set forth below, we conclude that the Sentencing Guidelines are invalid under the non-delegation theory or, alternatively, as an excessive delegation.*

As of July 20, 1988, 141 opinions or orders had been issued by various district courts around the country concerning the constitutionality of the Sentencing Guidelines. On different bases, a majority, 79–62, have found the Sentencing Guidelines unconstitutional. Considering the availability of these opinions, many of which contain an in-depth discussion of the Sentencing Reform Act's history and mechanics, we will avoid any further duplication and redundancy by confining our comments to an issue we believe has been inadequately addressed even by those courts which have found the Sentencing Guidelines unconstitutional. This issue is the non-delegation doctrine. We do, however, agree with the Ninth Circuit in *Gubiensio–Ortiz v. Kanahele*, 857 F.2d 1245 (9th Cir.1988), that the Sentencing Guidelines are unconstitutional because of the placement of three sitting Article III judges on the Sentencing Commission. Accordingly, we adopt that portion of *Gubiensio–Ortiz* which holds the Sentencing Guidelines unconstitutional because of the presence of Article III judges on the Sentencing Commission. Nevertheless, we write further because we believe that not only should Article III judges not be engaged in setting criminal penalties, but that Congress alone must do this.

█ Eastland contends that Congress has improperly delegated to the Sentencing Commission the task of legislating law which affects fundamental liberty interests. We agree. Article I of the Constitution provides that "all legislative powers ... shall be vested in the Congress of the United States." U.S.Const. art. I, § 1. Further, Congress is empowered "[t]o make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof." U.S.Const. art. I, § 8 cl. 18.

The non-delegation doctrine is founded on the theory that Congress alone can exercise "[t]he essentials of the legislative function, [which] are the determination of the legislative policy and its formulation and promulgation as a defined and binding rule of conduct." *Yakus v. United States*, 321 U.S. 414, 424, 64 S.Ct. 660, 667, 88 L.Ed. 834 (1944). "Formulation of policy is a legislature's primary responsibility, entrusted to it by the electorate." *United States v. Robel*, 389 U.S. 258, 276, 88 S.Ct.

* Because we conclude that the Sentencing Guidelines are unconstitutional on these grounds, we need not address other constitutional arguments raised by Eastland. Nevertheless, we note an additional concern about due process and separation of powers problems in the application of the Sentencing Guidelines as currently drafted. However, we do not address this concern at this time because the Court is confident that in the event the Guidelines are eventually upheld by a higher court, these constitutional problems relating to the application of the Guidelines in this district will be resolved administratively by the United States Attorney for the Northern District of Illinois. In the event that this cannot be accomplished, the Court reserves the right to publish a supplemental opinion at a later date concerning these additional constitutional concerns.

419, 430, 19 L.Ed.2d 508 (1976) (Brennan, J., concurring). More specifically, the non-delegation doctrine is regarded as essential to the preservation of two constitutional safeguards that protect each individual's liberty and property: congressional accountability and judicial review. *United States v. Williams*, 691 F.Supp. 36, 43 (M.D.Tenn.1988). Justice Harlan emphasized the importance of these safeguards in *Arizona v. California:*

> The [non-delegation] principle ... serves two primary functions vital to preserving the separation of powers required by the Constitution. *First*, it insures that the fundamental policy decisions in our society will be made not by an appointed official but by the body immediately responsible to the people. *Second*, it prevents judicial review from becoming merely an exercise at large by providing the courts with some measure against which to judge the official action that has been challenged.

*Arizona v. California*, 373 U.S. 546, 626, 83 S.Ct. 1468, 1511, 10 L.Ed.2d 542 (1983) (Harlan, J., dissenting in part).

The Supreme Court has invalidated legislation on improper delegation grounds only in two cases, *A.L.A. Schechter Poultry v. United States*, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935), and *Panama Refining Co. v. Ryan*, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935), and these cases are often criticized as the last vestige of the Supreme Court's "super legislature" period. Nonetheless, we ought not "shy away from our judicial duty to invalidate unconstitutional delegations of legislative authority solely out of concern that we should thereby reinvigorate discredited constitutional doctrines of the pre-New Deal era." *Industrial Union Department v. American Petroleum Institute*, 448 U.S. 607, 686, 100 S.Ct. 2844, 2886, 65 L.Ed.2d 1010 (1980) (Rehnquist, J., concurring).

With this in mind, the initial question we must answer is what has Congress delegated in this case. Has it merely delegated the responsibility for drafting procedural rules concerning the criminal sentencing procedures or has it delegated to the Sentencing Commission the task of setting actual criminal sanctions, something that affects a fundamental liability interest of criminal defendants? If the former, then there would be no problem under the non-delegation doctrine (provided Congress set forth intelligible principles). However, if the latter, then there are problems. We conclude that Congress has attempted to delegate to the Sentencing Commission the legislative policymaking function of setting criminal sanctions. *Accord, Gubiensio-Ortiz*, 857 F.2d at 1254. Congress alone has the power to create federal criminal law. *Liparota v. United States*, 471 U.S. 419, 424, 105 S.Ct. 2084, 2087, 85 L.Ed.2d 434 (1985). It is also indisputable "that the authority to define and fix the punishment for crime is legislative...." *Ex Parte United States*, 242 U.S. 27, 42, 37 S.Ct. 72, 74, 61 L.Ed. 129 (1916). The creation of a criminal code and the fixing of its punishment is a peculiarly legislative function because it involves the formulation of policy which is itself the "primary responsibility entrusted to ... [Congress] by the electorate." *United States v. Robel*, 389 U.S. 258, 276, 88 S.Ct. 419, 430, 19 L.Ed.2d 508 (1967) (Brennan, J., concurring).

Although the Supreme Court has not invalidated a congressional delegation under the non-delegation doctrine since the Depression, congressional delegations involving fundamental rights—and liberty is of course a fundamental right—have come under closer scrutiny by the Supreme Court. The Court has recognized that, if an administrative action involves a fundamental right, the Court will not presume that Congress has attempted to delegate the power to regulate the exercise of that right without a "clear statement" of congressional intent. In *Kent v. Dulles*, 357 U.S. 116, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958), for example, the Court held that the Secretary of State could not deny passports to persons because of their membership in the Communist Party. Refusing to reach the constitutional issue, the Court determined that the individual's interest at stake was so fundamental that it could be infringed only with explicit congressional authorization: "If [a] 'liberty' is to be regulated, it must

be pursuant to the lawmaking functions of the Congress. And if that power is delegated, the standards must be adequate to pass scrutiny by the accepted tests. Where activities or enjoyment, natural and often necessary to the well-being of an American citizen ... are involved, we will construe narrowly all delegated powers that curtail or dilute them." *Id.* at 129, 78 S.Ct. at 1120.

In *Greene v. McElroy*, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959), the Court refused to find an implicit congressional delegation of authority to the Department of Defense to administer a constitutionally questionable security clearance program. In striking down the program, the Court began by acknowledging that "the right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' and 'property' concepts of the Fifth Amendment." *Id.* at 492, 79 S.Ct. at 1411. The Court then stated that delegations of authority to affect such an interest must be made explicitly not only to assure that individuals are not deprived of cherished rights under procedures not actually authorized, but also because explicit action, especially in areas of doubtful constitutionality, requires careful and purposeful consideration by those responsible for enacting and implementing our laws. Without explicit action by lawmakers, decisions of great constitutional import and effect would be relegated by default to administrators who, under our system of government, are not endowed with authority to decide them. *Id.* at 507, 79 S.Ct. at 1419. The Court concluded that "[s]uch decisions ... cannot be assumed by acquiescence of non-action." *Id.*

■ Given this background, we find the court's synthesis in *United States v. Williams*, 691 F.Supp. at 44–47 (M.D.Tenn. 1988), of the Supreme Court's doctrine in this area helpful. In *Williams*, the court distilled the Supreme Court's treatment into four principles. First, the Supreme Court's decision in *Kent* and *Greene* teaches that if an administrative action implicates a fundamental right—such as the

right to travel or to hold employment—Congress' statutory delegation must be scrutinized closely. If a narrow construction of the statute fails to indicate that Congress intended for the administrative agency to promulgate rules involving the fundamental rights, then those rules will be found to be unauthorized by statute. Such a finding avoids the question of whether Congress could under any circumstances delegate such power. Second, the Supreme Court consistently has recognized that some legislative powers are non-delegable. The Court, however, has never invalidated a delegation on this basis. As a result, no listing of non-delegable functions can be articulated. Third, the Supreme Court has recognized that Congress has the authority to delegate many functions, but that Congress, at a minimum, must articulate an "intelligible principle" to guide federal officials in the conduct of their delegated duties. Finally, Congress' power to delegate narrows as the constitutional interest involved becomes more fundamental. Hence, the non-delegation doctrine properly is viewed as forming a continuum. On one end, broad delegations involving the regulation of economic activity generally are permissible. In the center, narrow delegations implicating important legislative functions, such as taxation, are permissible, but only if Congress expresses a clear intent to delegate such authority. At the other end of the continuum, no delegations involving as yet unidentified fundamental rights are permissible. *United States v. Williams*, 691 F.Supp. at 46–47.

The Court in *Williams* went on to conclude that Congress has intentionally delegated to the Sentencing Commission the task of setting criminal penalties which affect the fundamental liberty interest of criminal defendants. *United States v. Williams*, 691 F.Supp. at 48, 52. We agree. Accordingly, we conclude that Congress has improperly delegated a non-delegable legislative function to the Sentencing Commission and that therefore the Sentencing Guidelines are unconstitutional and unenforceable on the ground that they were promulgated by a body to which Congress, in accordance with the Constitution,

could not delegate such a function. *Accord United States v. Alafriz*, 690 F.Supp. 1303, 1314 (S.D.N.Y. July 6, 1988); *United States v. Brittman*, 687 F.Supp. 1329 (E.D. Ark.1988); *United States v. Brodie*, 686 F.Supp. 941, 949–950 (D.D.C.1988).

Because we conclude that promulgation of *binding* sentencing guidelines is a nondelegable legislative function, we need not decide whether it was also an excessive delegation as Eastland contends. We do observe, however, that even if we did not conclude that there is no such animal as a "non-delegable legislative function," we would conclude that delegation of functions affecting fundamental liberty interests would be held to a higher standard of review than the version of the "intelligible principle" currently used to review delegations solely affecting economic matters. Thus, while the standards Congress set forth in the Sentencing Reform Act might survive review under the test set forth in *National Cable Television Association, Inc. v. United States*, 415 U.S. 336, 342, 94 S.Ct. 1146, 1150, 39 L.Ed.2d 370 (1974), if the delegations affected only economic interests, we believe it would not survive the closer scrutiny required of delegations affecting fundamental rights. *Accord United States v. Russell*, 685 F.Supp. 1245 at n. 2 (N.D.Ga.1988). While Congress has set forth many different factors for the Sentencing Commission to consider in determining the Sentencing Guidelines, it has given no indication of the relative weight to be accorded each factor. As a result, the Sentencing Commission has been able to apply its own value judgments to such issues as the availability of probation and thus establish national policy without the accountability Congress has to its electorate. Probably the most egregious example of this wholesale abdication of accountability is the Sentencing Commission's consideration of whether to reinstate the death penalty. Although it ultimately declined to include a death penalty, the fact that it even thought it had the power to do so demonstrates the excessive delegation from Congress. As the Ninth Circuit observed in *Gubiensio–Ortiz:*

In implementing [the congressional] directives, the Commission had to make a variety of complex determinations that required the exercise of important policy judgments. What, for example, separates unwarranted sentencing disparities from ones that are warranted? What factors are relevant in determining whether the records of two individuals with wholly different backgrounds are similar or dissimilar for purposes of sentencing? What is the proper balance between deterrence and rehabilitation? Most fundamentally, how does one determine whether vastly different criminal conduct is similar or dissimilar for purposes of the punishment to be imposed? These questions do, of course, have to be answered by any rational sentencing scheme. But, in answering them, the Commission must draw upon judgments reflecting philosophies of criminal justice; it must make decisions, independent of particular cases, about the relative importance of such considerations as the "circumstances under which the offense was committed," the "community view of the gravity of the offense," and the "deterrent effect a particular sentence may have on the commission of the offense by others." 28 U.S.C. § 994(c)(2), (4), (6) (Supp. IV 1986). These are substantive decisions, fundamentally different from those governing the time for filing responsive pleadings or the extent of allowable discovery. True to its mission, the Commission proceeded to draw precisely the type of fine distinctions Congress entrusted to it. Thus, the guidelines provide equivalent punishments for such disparate offenses as shipping 50 weapons to a prohibited person and embezzling $150 from an employee pension plan; reckless homicide and transmitting wagering information; abuse of sexual contact that puts a child in fear and unlawfully entering or remaining in the United States; drug trafficking and violation of the Wild Free–Roaming Horses and Burros Act; aggravated assault and smuggling $11,000 worth of fish....

Nor were the Commission's judgments limited to individualized decisions as to

particular crimes. It made the policy judgment that the sentencing range for such white-collar crimes as public corruption, tax evasion and antitrust violations needed to be increased because it deemed these offenses more serious than judges seemed to have found them when imposing individual sentences.... In making this judgment, the Commission was perforce implementing its own understanding of public mores and values....

The Commission was also charged with making fundamental choices about the nature of penalties. For example, while Congress set outer limits on the length of probation, it delegated to the Commission the authority to decide when and where probation would be allowed. The Commission ultimately cut back sharply on the availability of probation, believing that more convicted criminals should serve some prison time.... Similarly, it decided that all non-indigent defendants must pay fines in the amounts provided by the schedule it promulgated....

Perhaps the most striking example of a policy choice made by the Commission was its decision to abstain from promulgating guidelines for the imposition of the death penalty for capital crimes....

By a 4–3 vote, the Commission decided not to include the death penalty in its guidelines, apparently because it feared that public controversy over the death penalty might lead Congress to block implementation of the guidelines.

*Gubiensio–Ortiz*, 857 F.2d at 1256. For all of these reasons, we believe that there has also been an excessive delegation of legislative responsibility to the Sentencing Commission and that the Sentencing Guidelines are therefore unconstitutional. These decisions must be made by a political body that is accountable to the public, not by an essentially invisible Sentencing Commission that answers to the public only through the president. Even if Congress may delegate these critical decisions, it may only do so by setting forth guidelines so complete that the commissioners are not able to substitute their personal value judgments for the judgments of our elected representatives.

## Conclusion

The goal of Congress and the Sentencing Commission to reduce undue disparity of sentencing is a noble one. It is not the role of this Court to adjudicate whether the Sentencing Guidelines accomplish this goal or in fact create greater hardships as charged by some critics. Our responsibility is to determine the constitutionality of the Sentencing Reform Act of 1984. Because the Sentencing Reform Act violates the non-delegation doctrine by improperly delegating to the United States Sentencing Commission the task of setting criminal penalties, we find that the Sentencing Reform Act is unconstitutional. Accordingly, Eastland's motion to declare the Sentencing Guidelines unconstitutional is granted. Eastland will be sentenced under prior law. It is so ordered.