## NATIONAL CABLE TELEVISION ASSN., INC. *v.* UNITED STATES ET AL.

No. 72–948.  Argued December 3, 1973—Decided March 4, 1974

DOUGLAS, J., delivered the opinion of the Court, in which BURGER, C. J., and STEWART, WHITE, and REHNQUIST, JJ., joined. MARSHALL, J., filed a dissenting opinion, in which BRENNAN, J., joined, *post*, p. 352. BLACKMUN and POWELL, JJ., took no part in the decision of the case.

*Stuart F. Feldstein* argued the cause for petitioner. With him on the briefs was *Stephen A. Gold.*

*Edward R. Korman* argued the cause for the United States et al. With him on the brief were *Solicitor General Bork, Assistant Attorney General Kauper, John W. Pettit,* and *Joseph A. Marino.**

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

The Independent Offices Appropriation Act, 1952, Tit. 5, 65 Stat. 290, 31 U. S. C. § 483a, provides in relevant part: "It is the sense of the Congress that any work, service . . . benefit, . . . license, . . . or similar thing of value or utility performed, furnished, provided, granted . . . by any Federal agency . . . to or for any person (including . . . corporations . . .) . . . shall be self-sustaining to the full extent possible, and the head of each Federal agency is authorized by regulation . . . to prescribe therefor . . . such fee, charge, or price, if any, as he shall determine . . . to be fair and equitable taking into consideration direct and indirect cost to the Government, value to the recipient, public policy or interest served, and other pertinent facts . . . ." [1] Petitioner is a trade association rep-

---

*Briefs of *amici curiae* urging reversal were filed by *Harold J. Cohen, F. Mark Garlinghouse,* and *Lloyd D. Young* for the American Telephone & Telegraph Co., and by *John B. Summers* for the National Association of Broadcasters.

[1] The Committee Report, H. R. Rep. No. 384, 82d Cong, 1st Sess., 2–3, makes the following comment on this measure:

"The Committee is concerned that the Government is not receiving full return from many of the services which it renders to special

resenting community antenna television (CATV) systems which transmit TV programs by cable. The Federal Communications Commission is authorized to regulate these CATV outlets, as the Court held in *United States* v. *Southwestern Cable Co.*, 392 U. S. 157. The power to regulate, though not in the form of granting licenses,

---

beneficiaries. Many fees for such services are specifically fixed by law, and in some cases, it is specifically provided that no fees shall be charged. In other cases, however, no fees are charged even though the charging of fees is not prohibited; and in still others, fees are charged upon the basis of formulae prescribed in law, but the application of the formulae needs to be re-examined to bring the actual charges into line with present-day costs and other related considerations.

"It is understood that other committees of the Congress have interested themselves in this matter and that studies now are under way which may result in further legislation to require that adequate consideration be received for such services. However, such studies are necessarily time-consuming and the required legislation may not be enacted for a considerable period. Accordingly, the Committee has inserted language in the bill (Title V, page 60) which would authorize and encourage the charging or increasing of fees to the extent permitted under present basic laws, but which would in no way conflict with studies now under way to effect changes in such basic laws.

"It is estimated that in 1952 the Government will receive more than $300,000,000 in fees from sources of the type here under consideration. It seems entirely possible that many of these fees could be raised, and that fees could be charged for other services of similar types in cases where no charge is now made, to the extent that the Government might realize upwards of $50,000,000 additional revenue.

"The bill would provide authority for Government agencies to make charges for these services in cases where no charge is made at present, and to revise charges where present charges are too low, except in cases where the charge is specifically fixed by law or the law specifically provides that no charge shall be made. It is not the Committee's intention in including this provision to disturb existing practices with respect to charges for postal services, sales of power, or the interest on loans by the Government."

extends to the promulgation of regulations requiring the compulsory origination of programs by CATV. *United States* v. *Midwest Video Corp.*, 406 U. S. 649. These CATV's, however, are not under the exclusive oversight of the Commission. Local governments and even some States provide permits or franchises to CATV's, including rights of way for the cables used. Some communities in return for their permits require the CATV to pay an annual percentage fee as a gross receipts tax.[2]

The Commission in 1964 established only nominal filing fees that produced revenues which approximated 25% of the Commission's annual appropriation. See 21 F. C. C. 2d 502, 503. See also *Aeronautical Radio, Inc.* v. *United States*, 335 F. 2d 304. The Bureau of the Budget urged higher fee schedules; and so did the committees of the Congress. See H. R. Rep. No. 91–316, pp. 7–8, and H. R. Conf. Rep. No. 91–649, p. 6, where it was stated:

> "The committee of conference is agreed that the fee structure for the Commission should be adjusted to fully support all its activities so the taxpayers will not be required to bear any part of the load in view of the profits regulated by this agency."

[2] The most recent CATV rules adopted by the Commission (37 Fed. Reg. 3280) require a CATV to receive a certificate of compliance from the Commission, 47 CFR § 76.11 (b), and require it to obtain from the appropriate local government authority a certificate containing prescribed recitations and provisions. 47 CFR § 76.31. The new rules also limit the franchise fees that may be imposed on CATV's by the localities where they operate. 47 CFR § 76.31. Included in the new rules are restrictions on telephone companies on whose poles the CATV cable is usually strung. See 47 CFR §§ 63.54–63.57, 64.601–64.602. And see *General Telephone Co.* v. *United States*, 449 F. 2d 846, 851; Report of Jan. 14, 1974, Cabinet Committee on Cable Communications (known as the Whitehead Report).

The Commission, after notice and hearing, revised existing fees for licensees and for the first time imposed fees upon CATV's. It first estimated its direct and indirect costs for CATV regulation which were $1,145,400 or 4.6% of its total budget request for that year. Filing fees were retained; and there was added an annual fee for each cable television system at the rate of 30 cents for each subscriber. The Commission, finding that subscription rates clustered at about $5 a month, concluded that the 30-cent fee would typically amount to only about one-half of 1% of a CATV system's gross revenues from subscription. The fees would produce, it said, $1,145,000 annually, and it concluded that the 30-cent fee would approximate the "value to the recipient" used in the Act, 23 F. C. C. 2d 880; 28 F. C. C. 2d 139.

Petitioner obtained review of the decision in the Court of Appeals, which approved the Commission's action, 464 F. 2d 1313. The case is here on a petition for certiorari which we granted, 411 U. S. 981, because of an apparent conflict between the decision in this case and the decision in *New England Power Co.* v. *FPC,* 151 U. S. App. D. C. 371, 467 F. 2d 425, of the Court of Appeals for the District of Columbia Circuit.

Taxation is a legislative function, and Congress, which is the sole organ for levying taxes,[3] may act arbitrarily and disregard benefits bestowed by the Government on a taxpayer and go solely on ability to pay, based on property or income. A fee, however, is incident to a voluntary act, *e. g.,* a request that a public agency permit an applicant to practice law or medicine or construct a house or run a broadcast station. The public agency performing those services normally may exact a fee for

---

[3] By Art. I, § 8, cl. 1, of the Constitution it is the Congress that has the "Power to lay and collect Taxes."

a grant which, presumably, bestows a benefit on the applicant, not shared by other members of society. It would be such a sharp break with our traditions to conclude that Congress had bestowed on a federal agency the taxing power that we read 31 U. S. C. § 483a narrowly as authorizing not a "tax" but a "fee." A "fee" connotes a "benefit" and the Act by its use of the standard "value to the recipient" carries that connotation. The addition of "public policy or interest served, and other pertinent facts," *if read literally,* carries an agency far from its customary orbit and puts it in search of revenue in the manner of an Appropriations Committee of the House.

The lawmaker may, in light of the "public policy or interest served," make the assessment heavy if the lawmaker wants to discourage the activity;[4] or it may make the levy slight if a bounty is to be bestowed; or the lawmaker may make a substantial levy to keep entrepreneurs from exploiting a semipublic cause for their own personal aggrandizement. Such assessments are in the nature of "taxes" which under our constitutional regime are traditionally levied by Congress.

There is no doubt that the main function of the Commission is to safeguard the public interest in the broadcasting activities of members of the industry. If assessments are made by the Commission against members of the industry which are sufficient to recoup costs to the Commission for its oversight, the CATV's and other broadcasters would be paying not only for benefits they received but for the protective services rendered the public by the Commission. The fixing of such as-

---

[4] Mr. Chief Justice Marshall is credited with the statement that "the power to tax is the power to destroy," to which Mr. Justice Holmes replied, "The power to tax is not the power to destroy while this Court sits." *Panhandle Oil Co.* v. *Knox,* 277 U. S. 218, 223 (dissenting opinion).

sessments, it is argued, is the levying of taxes. The Court, speaking through Mr. Chief Justice Hughes said in *Schechter Corp.* v. *United States,* 295 U. S. 495, 529:

> "The Constitution provides that 'All legislative powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives.' Art. I, § 1. And the Congress is authorized 'To make all laws which shall be necessary and proper for carrying into execution' its general powers. Art. I, § 8, par. 18. The Congress is not permitted to abdicate or to transfer to others the essential legislative functions with which it is thus vested."

Congress, of course, does delegate powers to agencies, setting standards to guide their determination. Thus, in *Hampton & Co.* v. *United States,* 276 U. S. 394, Congress enacted a flexible tariff law which authorized the imposition of customs duties on articles imported which equaled the difference between the cost of producing them in a foreign country and of selling them here and the cost of producing and selling like or similar articles in the United States. Provision was made for the investigation and determination of these differences by the Tariff Commission which reported to the President who increased or decreased the duty accordingly. The Court in sustaining that system said: "If Congress shall lay down by legislative act an intelligible principle to which the person or body authorized to fix such rates is directed to conform, such legislative action is not a forbidden delegation of legislative power." *Id.,* at 409.

Whether the present Act meets the requirement of *Schechter* and *Hampton* is a question we do not reach. But the hurdles revealed in those decisions lead us to read the Act narrowly to avoid constitutional problems.

The phrase "value to the recipient" is, we believe,

the measure of the authorized fee. The words "public policy or interest served, and other pertinent facts" would not seem relevant to the present case, whatever may be their ultimate reach. The backbone of CATV is individual enterprise and ingenuity, not governmental largesse. The regulatory regime placed by Congress and the courts over CATV was not designed to make entrepreneurs rich but to serve the public interest by "mak[ing] available . . . to all the people of the United States a rapid, efficient, Nation-wide, and world-wide wire and radio communications service." 48 Stat. 1064, as amended, 47 U. S. C. § 151.

While those who operate CATV's may receive special benefits, we cannot be sure that the Commission used the correct standard in setting the fee. It is not enough to figure the total cost (direct and indirect) to the Commission for operating a CATV unit of supervision and then to contrive a formula that reimburses the Commission for that amount. Certainly some of the costs inured to the benefit of the public, unless the entire regulatory scheme is a failure, which we refuse to assume. The philosophy of § 483a was stated by Congressman Sidney Yates of the House Committee on Appropriations. While he spoke of TV and radio broadcasters, what he said is germane to the CATV problem:

"I think it is only fair that in exchange for the franchise that the Government gives the broadcasting company and the protection which the Government affords to such broadcasting company to assure its freedom from interference in the operation of its broadcasting facilities in the particular point of the spectrum which it occupies, . . . it should pay some of the costs of the hearings. It is perfectly proper that the franchised company make a profit, and there has been much profit mak-

ing. Such companies should assume a greater share of the costs, because regulation is necesary." 97 Cong. Rec. 4809.

That congressional aim can be achieved within the framework of "value to the recipient" as contrasted to the public policy or interest that is also served.

The result is that we reverse the Court of Appeals so that the case can be remanded to the Federal Communications Commission for further proceedings consistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE BLACKMUN and MR. JUSTICE POWELL took no part in the decision of this case.

[For dissenting opinion of MR. JUSTICE MARSHALL, see *post*, p. 352.]