COLORADO–UTE ELECTRIC ASSOCIA-
TION, INC., a Colorado
corporation, Plaintiff,

v.

James G. WATT, Secretary of the Interior, U. S. Department of the Interior; Robert E. Burford, Director of the Bureau of Land Management, U. S. Department of the Interior; George C. Francis, Acting State Director of the Colorado State Office of the Bureau of Land Management, Defendants.

Civ. A. No. 80–C–500.

United States District Court,
D. Colorado.

Feb. 3, 1982.

R. Gregory Haller, Stephen N. Mathis, Mathis & Koonce, Montrose, Colo., for plaintiff.

Richard A. Jost, Asst. U. S. Atty., Denver, Colo., Steven A. Herman, Carolyn P. Osolinik, Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

Plaintiff, Colorado-Ute Electric Association, Inc. (hereafter, "Colorado-Ute") brought this action against Cecil D. Andrus as Secretary of the Interior, Frank Gregg as Director of the Bureau of Land Management, and Charles W. Luscher as Acting Director of the Colorado State Office of the Bureau of Land Management. These individual defendants have since been replaced as noted in the caption. *See* F.R.Civ.Proc. 25(d).

Colorado-Ute argues that certain Bureau of Land Management (hereafter, "BLM") reimbursement regulations are unlawful and cannot be enforced against it. The Interior Board of Land Appeals (hereafter, "IBLA") affirmed BLM's enforcement of its regulations against Colorado-Ute, *In re Colorado-Ute Electric Association, Inc.*, 46 IBLA 35 (1980). Colorado-Ute then brought this petition for judicial review of that IBLA decision. The parties have stipulated to the facts, and have presented their legal arguments as cross-motions for summary judgment. Jurisdiction is founded on 5 U.S.C. § 704 and 28 U.S.C. § 1331.

### I. *General Background.*

Colorado-Ute is a public utility, organized as a Colorado corporation comprised of thirteen members acting as a cooperative association. Its members are also Colorado corporations organized as cooperative associations or nonprofit corporations. Colorado-Ute sells electricity to its members, who then sell it at retail. In order to obtain and deliver the electricity, Colorado-Ute builds and maintains generation and transmission facilities. These facilities are financed largely through loans insured or guaranteed by the Rural Electrification Administration, a division of the United States Department of Agriculture.

On October 25, 1973, Colorado-Ute filed a right-of-way application with BLM, seeking permission to construct a portion of a power transmission line over twelve miles of BLM land. In 1975, while this application was pending, the Interior Department promulgated reimbursement regulations. 40 Fed. Reg. 17841. Until they were amended in 1980, these regulations had been codified at 43 C.F.R. § 2802.1–2. Since the 1980 amendment, they have been codified at 43 C.F.R. § 2803.1–1. Essentially, these Interior Department regulations provide that applicants for rights-of-way must reimburse the United States for

"administrative and other costs incurred by the United States in processing the application, including the preparation of [environmental impact statements]." 43 C.F.R. § 2803.1–1; see also former 43 C.F.R. § 2802.1–2.

Pursuant to these regulations, on August 22, 1973, BLM sent Colorado-Ute a bill for $5,707.27 to cover right-of-way processing costs from March 21, 1974 through July 31, 1975. On September 16, 1975, BLM sent Colorado-Ute a second bill in the amount of $7,451.60 for the estimated costs of monitoring construction of the transmission line. Colorado-Ute paid these bills under protest.

On October 6, 1975, Colorado-Ute's right-of-way application was granted. On October 30, 1975, Colorado-Ute filed a protest with BLM seeking refund of the $13,158.87 it had been assessed as costs. On January 28, 1976, BLM dismissed this protest. The dismissal was affirmed in part, and remanded in part, in *In re Colorado-Ute*, 46 IBLA 35. Colorado-Ute then filed this action for judicial review of the IBLA's decision to the extent it affirmed nearly all of the $13,-158.87 imposed by BLM as costs.

II. *Scope of Review and Issues.*

A district court's review of BLM determinations is governed by the Administrative Procedure Act, § 5 U.S.C. § 706, which provides, in applicable part:

"The reviewing court shall—

.    .    .    .    .

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

.    .    .    .    .

(B) contrary to constitutional right, power, privilege, or immunity; [or]

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right . . . ."

Colorado-Ute contends that: (1) the Interior Department regulations requiring reimbursement exceed the authority granted to the Department by Congress; (2) if the reimbursement regulations are within Congressional authority, they amount to an unconstitutional tax; and (3) if the regulations are constitutional, their application to a right-of-way permit pending before they were promulgated violates due process of law.[1]

III. *Specific Findings and Conclusions.*

A. *Are the reimbursement regulations within Interior's statutory authority?*

The parties have briefed extensively the legislative history of three Acts of Congress that bear upon the Interior Secretary's authority to seek reimbursement: (1) the Federal Land Policy and Management Act of 1976, (hereafter, "FLPMA"), 43 U.S.C. § 1701 et seq.; (2) the Public Land Administration Act of 1960 (hereafter, "PLAA"), former 43 U.S.C. § 1371 (Pub.L. 86–649, repealed in 1976 by FLPMA); and (3) the Independent Offices Appropriation Act of 1952 (hereafter, "IOAA"), 31 U.S.C. § 483a. I will not repeat that history, except to note that FLPMA had not yet been enacted in 1975 when Interior promulgated the BLM reimbursement regulations. The parties have not argued that FLPMA is materially different from the PLAA or IOAA with regard to the reimbursement regulations. Apparently, this view is shared by the

---

1. In addition, Colorado-Ute earlier had contended that it was exempt from the reimbursement requirement under former 43 C.F.R. § 2802.1–2(a)(2). Since it did not present this argument in its brief or during oral argument, the issue of a § 2802.1–2(a)(2) exemption is considered withdrawn.

Tenth Circuit. *See Beaver, Bountiful, Enterprise v. Andrus*, 637 F.2d 749, 756 (10th Cir. 1980). Consequently, I will limit my discussion to the FLPMA.

Section 304 of the FLPMA, 43 U.S.C. § 1734, provides in part:

(a) . . . the Secretary [of the Interior] may establish reasonable filing and service fees and reasonable charges, and commissions with respect to applications and other documents relating to the public lands and may change and abolish such fees, charges, and commissions.

(b) The Secretary is authorized to require a deposit of any payments intended to reimburse the United States for reasonable costs with respect to applications and other documents relating to such lands. . . . As used in this section "reasonable costs" include, but are not limited to, the costs of special studies; environmental impact statements; monitoring construction, operation, maintenance, and termination of any authorized facility; or other special activities. In determining whether costs are reasonable under this section, the Secretary may take into consideration actual costs (exclusive of management overhead), the monetary value of the rights or privileges sought by the applicant, the efficiency of the government processing involved, that portion of the cost incurred for the benefit of the general public interest rather than for the exclusive benefit of the applicant, the public service provided, and other factors relevant to determining the reasonableness of the costs."

Section 504(g) of the FLPMA, 43 U.S.C. § 1764(g), provides in part:

". . . [t]he Secretary . . . may, by regulation or prior to promulgation of such regulations, as a condition of a right-of-way, require an applicant for or holder of a right-of-way to reimburse the United States for all reasonable administrative and other costs incurred in processing an application for such right-of-way and in inspection and monitoring of construction, operation, and termination of the facility pursuant to such right-of-way . . . ."

As noted above, the BLM regulations here challenged require right-of-way applicants to reimburse the United States for administrative and other costs incurred in processing applications. 43 C.F.R. § 2803.-1–1(a)(1); *see also* former 43 C.F.R. § 2802.1–2(a)(1). The Secretary of the Interior has interpreted the FLPMA and BLM regulations to permit recovery, as "reasonable costs," of the actual costs incurred by the United States in processing right-of-way applications. *See* Order No. 3011, 42 Fed.Reg. 55280 (October 14, 1977).[2]

Colorado-Ute argues that the Secretary's interpretation exceeds his authority for cost recovery granted by the FLPMA, for two reasons. First, it contends that BLM must apply 43 U.S.C. § 1734(b)'s factors to right-of-way applicants on an application-by-application basis. The Secretary's Order No. 3011 was improper, therefore, since it applied § 1734(b)'s factors to right-of-way applicants as a class and determined that those applicants would be liable for BLM's actual costs in processing applications. Second, Colorado-Ute contends that the Secretary erred by failing to require BLM to consider § 1734(b) factors other than actual costs in seeking reimbursement from right-of-way applicants.

■ Colorado-Ute's first contention disregards the FLPMA's plain language. Nowhere in that Act did Congress require the Secretary or his subordinate agencies to apply § 1734(b)'s factors to every right-of-way application submitted. Instead, § 1734(b) authorizes the Secretary to require applicants to reimburse the government for "reasonable" application costs, and defines what factors the Secretary may

---

**2.** Although issued after the challenged regulations were first promulgated, the parties agree that Order No. 3011 generally serves to continue the Interior Department's prior practice under those regulations. The only change was to abandon recovery of "management overhead" expenses from right-of-way applicants. This abandonment was required by the FLPMA. 43 U.S.C. § 1734(b).

take into consideration in determining what costs are "reasonable." If Congress had wished § 1734(b)'s factors applied to every application on an individual basis, it would have said so explicitly. Even so, each right-of-way application is treated separately to a great extent, since such treatment is necessary to determine the actual costs to the government of processing a particular application.

Colorado-Ute's second contention also is refuted by the FLPMA's language. Section 1734(b) clearly states that the Secretary *may* take several factors into consideration in determining what costs are reasonable. The only possible inference from Congress' use of the permissive "may" is that the Secretary can, at his discretion, consider one, some, all, or none of those factors in creating fee schedules for the recovery of reasonable application processing costs. Any other construction of § 1734 would, in effect, rewrite the statute. Thus, to the extent that *Nevada Power Co. v. Watt*, 515 F.Supp. 307, 320–22 (D.Utah 1981) holds that the Secretary must explicitly consider all of § 1734's factors in determining reasonable costs, I decline to follow that opinion.

It must be noted that Congress has not modified § 1734 to require the Secretary to consider all its factors. This certainly undermines any inference that Congress disapproves the Secretary's decision to assess actual costs for right-of-way applications. In addition, Congress has recognized that right-of-way application fees are used by BLM to finance the costs of processing applications, including the preparation of environmental impact statements (hereafter, "EIS's"). *See* P.L. 95–74, 91 Stat. 285; S.Rep.No. 95–276, 95th Cong., 1st Sess. 9 (1977); H.R.Rep.No. 95–392, 95th Cong., 1st Sess. 20–21 (1977). Congress has not appropriated additional funds for right-of-way processing by BLM since 1977. *See* S.Rep.No. 96–363, 96th Cong., 1st Sess. 11 (fiscal year 1980); H.R.Rep.No. 96–374, 96th Cong., 1st Sess. 15 (fiscal year 1980); S.Rep.No. 95–1063, 95th Cong., 2d Sess. 12 (fiscal year 1979). Thus, assuming that Congress intends right-of-way processing to continue, it must intend that all, or nearly all the costs incident to processing be borne by the applicant.

For these reasons, I conclude that the Interior Department's regulations assessing as fees its actual processing costs for each right-of-way application are within the authority granted to it by the FLPMA.

B. *Are the reimbursement regulations an unconstitutional tax?*

Colorado-Ute contends that BLM's practice of recovering actual processing costs from right-of-way applicants reimburses the agency for benefits conferred on the public in addition to those conferred on the applicants, and thus amounts to an unconstitutional tax imposed by the BLM. *See National Cable Television Association, Inc. v. United States*, 415 U.S. 336, 340–41, 94 S.Ct. 1146, 1148–49, 39 L.Ed.2d 370 (1974) (hereafter, "*NCTA*"). Colorado-Ute focuses its argument on BLM's practice of recovering the actual costs of preparing an EIS in relation to a particular application.

In *NCTA*, the Supreme Court recognized that taxation is purely a legislative function which cannot be delegated. *NCTA*, 415 U.S. at 340–42, 94 S.Ct. at 1148–49. Agencies may be empowered, however, to exact fees for services that confer on an applicant a benefit not shared by other members of society. *Id.* The Constitution prevents Congress from delegating its power to tax under the guise of permitting a federal agency to exact a fee for services rendered. But " '[i]f Congress shall lay down by legislative act an intelligible principle to which the person or body authorized to fix such [fees] is directed to conform, such legislative action is not a forbidden delegation of legislative power.' " *NCTA*, 415 U.S. at 342, 94 S.Ct. at 1150, *quoting Hampton & Co. v. United States*, 276 U.S. 394, 409, 48 S.Ct. 348, 352, 72 L.Ed. 624 (1928).

The FLPMA's legislative history indicates that Congress was acutely aware of *NCTA* and the prohibition against delegating its taxing power when it enacted the FLPMA.

*See* "Unpublished Meeting and Markup Transcript," September 15, 1976, pp. 14–19 and 30–31, attached as Appendix A to the Memorandum in Support of Defendants' Motion for Summary Judgment. Its solution to this problem was to adopt § 1734 with a limitation to recovery of "reasonable costs." Categories of items that could be treated as "reasonable costs" were listed, as well as the permissive factors discussed above in III.A. Congress included EIS preparation costs as "reasonable costs." *See* § 1734(b). It also included a suggestion that the Secretary consider "the cost incurred for the benefit of the general public interest rather than for the exclusive benefit of the applicant" in determining "reasonable costs." *See* § 1734(b).

■ For these reasons, § 1734 is not on its face an unconstitutional delegation by Congress of the power to tax. Colorado-Ute argues, however, that the Secretary has usurped the power to tax by assessing right-of-way applicants with BLM's actual costs of preparing EIS's. It is clear that the BLM may recover at least part of its EIS preparation costs from right-of-way applicants. *See Alumet v. Andrus*, 607 F.2d 911, 916 (10th Cir. 1979). The question here is whether the Secretary can constitutionally authorize BLM to recover its full, actual EIS preparation costs.

Judge Finesilver has ruled that the BLM's actual cost in providing a particular service is the maximum that it constitutionally may charge an applicant for a right-of-way. *See Public Service Co. v. Andrus*, 433 F.Supp. 144, 153 (1977). The BLM has not exceeded this maximum here. In *Public Service*, Judge Finesilver also held that the BLM could not recover EIS preparation costs because an EIS, by its very nature, benefits the public's interest in environmental protection. *Id.* at 152, 153.

*Public Service* provides only limited guidance in this case, however, for two reasons. First, Judge Finesilver did not consider[3]

the reimbursement regulations in light of the FLPMA, which expressly provides for EIS cost recovery. Second, since *Public Service* was decided, the Fifth Circuit has reached an opposite result. *See Mississippi Power & Light v. NRC*, 601 F.2d 223, 231 n.17 (5th Cir. 1979) (hereafter, "*Mississippi Power*"). My great respect for my learned colleague leads me to believe that if he had had the benefit of being able to rely on these two later developments, his decision might have been different.

*Mississippi Power* upheld the NRC's assessment of its full EIS preparation costs: "because [EIS's] are a prerequisite to the issuance of a license. It matters not that the legal obligation of preparing environmental impact statements rests with the NRC; nor is the Commission's authority to assess such fees undercut by the obvious public benefit flowing from the preparation of these environmental reviews. The Commission must conduct these reviews before it can issue a license to an applicant; it is a necessary part of the cost of providing a special benefit to the licensee. In other words, it is 'incident to a voluntary act.' Because the Commission may recoup the *full cost* of conferring a special benefit, it may recover its costs for conducting environmental reviews." *Mississippi Power*, 601 F.2d at 231 (footnotes omitted, emphasis in original).

■ For these reasons, I conclude that the BLM may recoup as "reasonable costs," its full actual costs in processing a right-of-way application, including the cost of EIS preparation. This is not to say, however, that the BLM's actual costs in processing a particular application will always be recoverable as "reasonable." An applicant may challenge, as "unreasonable," costs actually incurred by the BLM which are not reasonably necessary to processing its application. In my view, this sort of challenge will be adequate to insure that the agency does not abuse its powers of cost recovery.

---

**3.** *See Public Service*, 433 F.Supp. at 147, n.2. As noted above the Tenth Circuit has considered the reimbursement regulations under the FLPMA, *Beaver, Bountiful, Enterprise v.*

*Andrus*, 637 F.2d 749, 756 (10th Cir. 1980), and the parties to this action have argued the challenged regulations in terms of the FLPMA.

C. *Does application of the reimbursement regulations to pending applications deny due process?*

Colorado-Ute contends that BLM may not apply its reimbursement regulations to Colorado-Ute's application, which was already pending on June 1, 1975, when the regulations first took effect. Since no application had been granted at that time, however, Colorado-Ute held no vested right and cannot establish a denial of due process by a retroactive change in the regulations. *See Hunter v. Morton*, 529 F.2d 645, 648 (10th Cir. 1976). In addition, the Secretary published a notice and text of proposed rulemaking on September 3, 1974. Thus, Colorado-Ute was warned nine months before the regulations were adopted that cost recoupment would be imposed. It could have withdrawn its application before those regulations took effect, but chose not to do so. Any retroactive effect these regulations might have on Colorado-Ute's application is not unreasonable, and therefore is not unconstitutional. *See Public Service*, 433 F.Supp. at 154.

For these reasons, the defendants' motion for summary judgment must be granted, and Colorado-Ute's summary judgment motion must be denied.

Accordingly,

IT IS ORDERED that the Interior Board of Land Appeals' decision is AFFIRMED.