876 F.Supp. 222 (1994)
STATE OF CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL, State of California Hazardous Substance Account, and State of California Hazardous Substance Cleanup Fund, Plaintiffs,
v.
SNYDERGENERAL CORP., SSP Industries, Stanley-Bostitch, Inc., Textron, Inc., Sunstar Plastics Engineering Corp., Jane Louise Caviglia and Gary Stephen Caviglia, Defendants.
No. CV-F-92-5685-REC.
United States District Court, E.D. California.
April 15, 1994.
*223 Kevin James, California State Atty. Gen., Oakland, CA.
Russell G. Van Rozeboom, Wild Carter Tipton and Oliver, Fresno, CA.
Michael L. Jones, Freida A. Clark, Henry Meier Jones and Travis, Dallas, TX.

ORDER RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
COYLE, Chief Judge.
On January 31, 1994, this Court defendants' Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56. Upon consideration of the written and oral arguments of the parties and the record set forth herein, the Motion is denied for the following reasons.

I. BACKGROUND

This case surrounds the cleanup of chlorinated solvent contamination at the intersection of Goshen Avenue and Shirk Road in Visalia, California ("the Site"). The Site is composed of two parcels  the "Stanley Parcel," currently owned by Stanley-Bostitch, and the "SnyderGeneral Parcel," currently owned by the Caviglias and operated by Sunstar.[1]
In 1984, Stanley discovered chlorinated solvents in the groundwater beneath and migrating from the Site, and began to assess the environmental conditions there. As a result of remedial investigative work by Stanley and SnyderGeneral, supervised by the Department, the Department learned that the soil and groundwater of both parcels are contaminated with chlorinated solvents.
Stanley and SnyderGeneral have hired their own contractors and have spent over $10 million in cleanup costs. The Department has ordered, instructed, and extensively conferred with Stanley and SnyderGeneral since 1986 as to the contractors' activities. It has also supervised the planning and conduct of Site activities and analyzed data gathered by the removal and remedial activities. As a result, plaintiff has ordered defendants to take actions essential for the protection of public health and environmental quality that would have been otherwise foregone. These actions also saved defendants some money.
The Department incurred more than $584,700 in costs conducting and supervising response activities at the Site between 1986 and June 30, 1993. These costs include both direct costs (Department staff time) and indirect costs (prorated share of Department rent, utility, and equipment expenses.) These costs are what the complaint seeks to recover.
Defendants' motion presents a single legal issue of first impression in the Ninth Circuit: whether CERCLA permits the Department to recover the supervisory costs it continues to incur in overseeing defendants' private cleanup efforts. Four of the defendants  SnyderGeneral, SSP Industries, Stanley-Bostitch and Textron  move for summary judgment, arguing that the answer is no.

II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Summary judgment is proper when the movant carries its burden of showing that *224 there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Moving defendants opine that costs sought by plaintiffs are not recoverable as "removal or remedial" costs under CERCLA § 107(a), 42 U.S.C. § 9607(a), and rely heavily on a Third Circuit case as support. See United States v. Rohm and Haas Co., 2 F.3d 1265 (3rd Cir.1993). However, the reasoning of Rohm and Haas Co. is misguided, and a proper construction of CERCLA allows administrative recovery of costs incurred in overseeing cleanup activities by either private parties or agencies.
CERCLA's fundamental goal is "to facilitate the prompt cleanup of hazardous waste sites by placing the ultimate financial responsibility on those responsible for hazardous wastes." Walls v. Waste Resource Corp., 823 F.2d 977, 981 (6th Cir.1987). This is accomplished by either a government-conducted cleanup, followed by a cost recovery action, or a private party cleanup, as is the case here.
Section 107 of CERCLA, 42 U.S.C. § 9607, provides for reimbursement by responsible parties for "removal and remedial" costs incurred by the government:
(4) Any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for 
(A) all costs of removal[2]or remedial[3]action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan.
42 U.S.C. § 9607(a). Although the oversight and supervisory costs at issue are not among the examples of "removal" and "remedial" actions named in their definitions, such costs are not precluded because "removal" and "remedial" actions are "not limited to" those given examples. 42 U.S.C. § 9601(23) and (24).
To find whether the disputed oversight costs are indeed reimbursable, the "starting point for interpreting a statute is the language of the statute itself." Consumer Product Safety Com. v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). "Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." Id. Note also that "CERCLA is a remedial statute which should be construed liberally to effectuate its goals." United States v. Alcan Aluminum Corp., 964 F.2d 252, 258 (3d Cir.1992).
Oversight is not a rubber-stamp review of paperwork. It involves ongoing analysis of the release to determine whether prior assessments are correct, and whether modifications to selected response actions are necessary. (Kovac Decl. ¶¶ 6-19 (specific enumeration of oversight activities)). This oversight also prevents unsafe emphasis on cost minimization and vigilantly ensures against cutting corners to protect public health and the environment. Defendants do not dispute that plaintiffs' oversight caused them to take steps of environmental protection they would not otherwise have taken.
*225 Thus, these supervisory costs are necessary and fall within three clauses of the broad "removal" definition: (1) "such actions as may be necessary to prevent, minimize, or mitigate damages to the public health or welfare or the environment;" (2) "such actions as may be necessary to monitor, assess, and evaluate ... the disposal of removed material;" (3) "taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment." 42 U.S.C. § 9601(23) (emphasis added). Similarly, the disputed costs could fit into the definition of "remedial activity": "those actions ... taken ... to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment." 42 U.S.C. § 9601(24).
Defendants ignore this plain reading and blankly assert that the Department's supervisory function was not an "action as may be necessary" under CERCLA's definition of "removal action." They do not explain why. Rather, they presume that CERCLA's provision for reimbursement, section 107, relates exclusively to cost recovery when agencies undertake cleanup pursuant to section 104, 42 U.S.C. § 9604. Their corollary is that section 107 cost recovery cannot apply when responsible parties undertake the cleanup pursuant to section 106, 42 U.S.C. § 9606. There is no evidence in the language, however, that section 107 is wedded to section 104 alone. Rather, section 107's provision for reimbursement of "all costs of removal or remedial action" strongly suggests the contrary.
Moreover, CERCLA explicitly provides that the terms "removal" and "remedial action" include "enforcement activities related thereto." 42 U.S.C. § 9601(24). There is abundant authority consistent with this Court's reading. See United States v. R.W. Meyer, Inc., 889 F.2d 1497, 1504 (6th Cir. 1989) (holding that responsible parties must "bear the full cost of cleanup actions and that those costs necessarily include both direct costs and a proportionate share of indirect [overhead] costs attributable to each site"); United States v. Northeastern Pharmaceutical & Chemical Co., ("NEPACCO") 810 F.2d 726, 747 (8th Cir.1986) (finding that the government's right to recover response costs was very broad and included litigation costs, attorney's fees, future response costs, etc.); United States v. American Cyanamid Co., 786 F.Supp. 152, 157 (D.R.I.1992) ("It is worth reiterating that all costs incurred by the government are recoverable under this section. This includes indirect costs and administrative expenses.")
In Rohm and Haas Co., 2 F.3d at 1265, the Third Circuit contrarily held that the federal government could not recover such costs under section 107(a). It reasoned that such costs are administrative costs not inuring directly to the benefit of the regulated parties, but to the public at large, and are therefore unrecoverable according to reasoning in National Cable Television Ass'n v. United States, ("NTCA") 415 U.S. 336, 94 S.Ct. 1146, 39 L.Ed.2d 370 (1974). The NCTA case involved the FTC's overstep of its power to charge fees pursuant to the Independent Offices Appropriation Act of 1952 which allowed executive powers to impose "fees" in spite of the Constitution's nondelegation clause.
Rohm and Haas is neither binding nor persuasive in this case. In another case involving the State of California, Judge Karlton of this district rightly held that "[h]ere it is the State government, not the federal government, seeking recovery of costs and thus no issue relating to the separation of powers mandated by the federal constitution is tendered by the matter at bar and, accordingly, no issue resolved by Rohm and Haas is at issue here." State of California v. Louisiana-Pacific, No. S-89-871-LKK (E.D.Cal. March 21, 1994). Rohm and Haas is inapposite in this case for the same reason.
ACCORDINGLY, IT IS ORDERED THAT defendants' Motion for Summary Judgment is denied.
NOTES
[1] The Stanley Parcel was formerly owned and operated by Textron. The SnyderGeneral Parcel was formerly owned and operated by SSP and McQuay, Inc., predecessor to SnyderGeneral.
[2] "Removal" is defined under CERCLA as:

[1] the cleanup or removal of released hazardous substances from the environment, [2] such actions as may be necessary [sic] taken in the event of the threat of release of hazardous substances into the environment, [3] such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, [4] the disposal of removed material, or [5] the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or the environment, which may otherwise result from a release or threat of release.
42 U.S.C. § 9601(23).
[3] "Remedial action" is defined under CERCLA as:

[T]hose actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment.
42 U.S.C. § 9601(24).