**AMERICAN MEDICAL ASSOCIATION, American Dental Association, American Osteopathic Association, American Veterinary Medical Association, National Association of Retail Druggists, National Wholesale Druggists Association, National Association of Chain Drug Stores, Patrick E. Whitten, M.D., and Edward Dillon, R.Ph., Plaintiffs,**

v.

**Janet RENO, Attorney General, Robert C. Bonner, Administrator, Drug Enforcement Administration, and Drug Enforcement Administration, Defendants.**

Civ. A. No. 93–1189 SSH.

United States District Court, District of Columbia.

July 5, 1994.

Carter G. Phillips, Mark E. Haddad, Jonathan E. Nuechterlein, Sidley & Austin, Washington, DC, for plaintiffs.

Vincent Morgan Garvey, Sylvia T. Kaser, Civil Div., U.S. Dept. of Justice, Washington, DC, for defendants.

## OPINION

STANLEY S. HARRIS, District Judge.

Before the Court is defendants' motion for summary judgment. Also before the Court is plaintiffs' motion for summary judgment on Counts I and II of the amended complaint. Plaintiffs challenge a final rule of the Drug Enforcement Administration ("DEA") increasing existing registration fees for all handlers of controlled substances; these fees are used to support the DEA's Diversion Control Program. See 58 Fed.Reg. 15272 (1993) (codified at 21 C.F.R. §§ 1301.11). Specifically, plaintiffs contend that the DEA violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 551, by failing to provide both a reasonable notice of proposed action and a reasoned explanation for its decision. Plaintiffs also allege that the DEA improperly ignored the Independent Offices Appropriation Act ("IOAA"), 31 U.S.C. § 9701, in promulgating the Final Rule. Finally, plaintiffs claim that the revised registration fee schedule violates the takings and due process clauses of the Fifth Amendment. Upon careful consideration of the entire record, the Court grants defendants' motion and denies plaintiffs' motion. Although "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56," Fed.R.Civ.P. 52(a), the Court nonetheless sets forth its analysis.

## Background

The Comprehensive Drug Abuse Prevention and Control Act (popularly known as the Controlled Substances Act) (the "CSA") authorizes the Attorney General to "promulgate rules and regulations and to charge reasonable fees relating to the registration and control of the manufacture, distribution, and dispensing of controlled substances." 21 U.S.C. § 821.[1] Pursuant to the CSA, the DEA established the first registration fee schedule in 1971. 36 Fed.Reg. 7776 (Apr. 24, 1971). The DEA amended the fee schedule in 1984. 48 Fed.Reg. 56043 (Dec. 19, 1983). This schedule remained in effect until 1993.

On October 6, 1992, Congress passed the Departments of Commerce, Justice, State, the Judiciary, and Related Agencies Appropriations Act of 1993, Pub.L. No. 102–395, 106 Stat. 1828 (codified at 21 U.S.C. § 886a) ("1993 Appropriations Act"). Section 111(b) of this Act establishes in the Treasury a separate account, the Diversion Control Fee Account, into which "there shall be deposited as offsetting receipts ... all fees collected by the Drug Enforcement Administration, in excess of $15 million, for the operation of its diversion control program." Id. at § 111(b)(1), 106 Stat. at 1843.[2] Section 111 further directs that:

Notwithstanding Any Other Provision of Law....

(b) ....

(3) Fees charged by the Drug Enforcement Administration under its diversion control program shall be set at a level that ensures the recovery of the full costs of operating the various aspects of that program.

(4) The amount required to be refunded from the Diversion Control Fee Account for fiscal year 1994 and thereafter shall be refunded in accordance with estimates made in the budget request of the Attorney General for those fiscal years.

Id. at § 111, 106 Stat. at 1842–43.

On December 18, 1992, the DEA published its proposal to revise the existing fee schedule. 57 Fed.Reg. 60148 (Dec. 18, 1992) (the "NPRM"). In the NPRM, the DEA ex-

---

**1.** The Attorney General has delegated this duty to the DEA.

**2.** The first $15 million collected by the DEA in CSA registration fees must be deposited into the general fund of the Treasury; a corresponding amount is then appropriated through the "DEA Salaries and Expenses" appropriation from the general fund of the Treasury for the Diversion Control Program. See Budget Enforcement Act of 1990, Pub.L. No. 101–508, 104 Stat. 1388–574 (codified at 2 U.S.C. §§ 900–904).

plained that the 1993 Appropriations Act required it to recover the costs of the diversion control program for the fiscal year 1993 and thereafter through the registration fee, and that the Congressional appropriations process established the amount to be recovered. *Id.* The NPRM invited public comment for a thirty-day period ending on January 19, 1993.

The DEA published its final rule on March 22, 1993, adopting a fee schedule similar to that presented in the NPRM. 58 Fed.Reg. 15272 (1993) (codified at 21 C.F.R. § 1301.11) (the "Final Rule"). In response to comments that it should recover the costs of the program through other sources, and that the fees proposed were unreasonable and excessive, the DEA responded that "[t]he legislation does not give DEA discretion to set the fees at a lower level than that necessary to recover the full costs of the Diversion Program." *Id.* at 15273. The DEA also rejected comments that it should have followed the criteria established by the IOAA in setting the revised fees. The DEA explained that because the 1993 Appropriations Act defined the basis for the fee as that established by the budget process, it was required to adhere to this specific legislative directive, rather than the more general command of the IOAA. *Id.* at 15273. In addition, the DEA rejected comments that the NPRM did not provide adequate information about either the components of the diversion control program or the determination of the fee increases, and that the revised fees were an unconstitutional tax on registrants to support activities unrelated to their registrations.[3]

### Discussion

A court may grant summary judgment when the pleadings and supplemental materials present no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celo-*

*tex Corp. v. Catrett,* 477 U.S. 317, 321–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Because the issues raised by the present motions concern only questions of law, this matter is ripe for resolution on summary judgment.

### Administrative Procedure Act

█ Count I of plaintiffs' amended complaint alleges that the DEA violated its duty under the APA to provide a reasonable notice of, and a reasoned explanation for, the fee schedule it adopted in the Final Rule. Specifically, plaintiffs argue that defendants violated the APA by failing both to define adequately the diversion control program and to explain how it calculated the fees associated with that program.[4] The Court disagrees.

█ The APA requires an agency engaged in informal rulemaking to publish in the Federal Register a notice of proposed rulemaking that includes "either the terms or substance of the proposed rule or a description of the subjects and issues involved." 5 U.S.C. § 553(b)(3). This notice must provide sufficient factual detail and explanation for the rule to allow interested parties to comment meaningfully, and must also give adequate time for such comment. *See, e.g., Florida Power & Light Co. v. United States,* 846 F.2d 765, 771 (D.C.Cir.1988), *cert. denied,* 490 U.S. 1045, 109 S.Ct. 1952, 104 L.Ed.2d 422 (1989); *Connecticut Light & Power Co. v. NRC,* 673 F.2d 525, 530 (D.C.Cir.), *cert. denied,* 459 U.S. 835, 103 S.Ct. 79, 74 L.Ed.2d 76 (1982). The final rule must provide "a concise general statement of [its] basis and purpose." 5 U.S.C. § 553(c). "This statement need not be comprehensive, but it must indicate sufficiently the agency's reasons for the rules selected, so that the reviewing court is not faced with the task of 'rummaging' through the record

---

3. In response to these comments, the DEA did, however, determine that direct and indirect costs associated with the enforcement of the Chemical Diversion and Trafficking Act should not be funded by registration fees. Thus, the DEA deducted $8.1 million from the calculation for the Diversion Control Program Fee Account, and adjusted the fee schedule accordingly.

4. Plaintiffs also claim that the DEA failed to justify the manner in which it allocated fees across the various categories of controlled substance handlers. In the NPRM, the DEA stated that "[m]odifications to the fee structure have been applied equitably across all registration categories in accordance with the existing fee structure." 57 Fed.Reg. 60148. This justification is sufficient under the APA.

to elicit a rationale on its own." *Connecticut Light & Power Co.*, 673 F.2d at 534–35 (citations omitted).

In both the NPRM and the Final Rule, the DEA explained that it was required by law to set the registration fees at a level to ensure full recovery of the cost of the diversion control program. It further explained that Congress directed that the DEA's budget request establish the amount to be recovered. In the Final Rule, in response to comments that the diversion control program was not adequately defined, the DEA listed the general categories of the program and stated that the budget request itself clearly delineated the elements of the program. Given the directive from Congress to recover all fees for the program as established by the budget request, this explanation was sufficient to fulfill the requirements of the APA. The APA does not require, as plaintiffs suggest, that the DEA list the components and costs of the diversion control program, and allow interested parties, in effect, to participate in the setting of the proposed budget. *Cf. Florida Power & Light Co.*, 846 F.2d at 771.[5] Therefore, the Court finds that defendants are entitled to summary judgment on Count I of plaintiffs' amended complaint.

*Independent Offices Appropriations Act*

■ In Count II of the amended complaint, plaintiffs allege that the DEA improp-

erly ignored its obligation under the IOAA to consider the benefits afforded to registrants in defining the scope of the diversion control program. The IOAA is a generic user fee statute. It permits a federal agency to collect user fees only to the extent that each fee payor receives, in exchange for his payment, a "'measurable unit or amount of Government service or property from which he derives a special benefit.'" *Federal Power Comm'n v. New England Power Co.*, 415 U.S. 345, 349, 94 S.Ct. 1151, 1154, 39 L.Ed.2d 383 (1974) (citing OMB Circular No. A–25). The IOAA applies, however, only when there is no independent statutory source for the charging of a fee or where a fee statute fails to define fee-setting criteria. *See National Cable Television Ass'n, Inc. v. United States*, 415 U.S. 336, 94 S.Ct. 1146, 39 L.Ed.2d 370 (1974); *see also Florida Power & Light Co., Inc.*, 846 F.2d at 769.[6] Here, the 1993 Appropriations Act establishes a specific criterion for the setting of a fee. It provides that "[n]otwithstanding [a]ny [o]ther [p]rovision of [l]aw," the DEA is required to collect sufficient fees to recover fully the diversion control program costs, as estimated in its budget request. Pub.L. No. 102–395 at § 111, 106 Stat. at 1842–43 (codified at 21 U.S.C. § 886a). Thus the standard of the IOAA is not applicable here.[7] Accordingly, defendants are entitled to summary judgment on Count II of the amended complaint.

5. Plaintiffs suggest that defendants' acknowledgement in the Final Rule that funds relating to the Chemical Diversion and Trafficking Act should not be considered part of the diversion control program supports its view that the budget request is an unreliable indicator of the costs of the diversion control program. They argue, therefore, that they should be entitled to offer input on whether any other areas were improperly included in the program. The Court disagrees. The 1993 Appropriations Act directs the DEA to recover the cost of the diversion control program in accordance with its budget estimate. Budget formulation is a task reserved for the executive branch. Because the DEA has responsibility for formulating the budget estimate, it is irrelevant that a revision took place in response to comments but without input from interested parties. *See Florida Power & Light Co.*, 846 F.2d at 771.

6. Thus the Court finds plaintiffs' contention that the IOAA codifies the takings clause of the Fifth Amendment unpersuasive. The purpose of the Supreme Court's narrow construction of the

IOAA was to avoid the constitutional problem of the authorization of an unconstitutional delegation of Congress' taxing power. *See National Cable Television Ass'n, Inc. v. United States*, 415 U.S. 336, 94 S.Ct. 1146, 39 L.Ed.2d 370 (1974). Nowhere did the Court suggest that a failure to follow the strictures of the IOAA would constitute an unauthorized taking. Rather, the Court implied the opposite, as it specified that Congress could establish fee-setting criteria independent of the IOAA. *Id.* at 342–44, 94 S.Ct. at 1150. Moreover, the fee-setting standard of the IOAA goes beyond that which is required to avoid an unconstitutional taking. *See, e.g., United States v. Sperry Corp.*, 493 U.S. 52, 110 S.Ct. 387, 107 L.Ed.2d 290 (1989); *Maine v. Department of Navy*, 973 F.2d 1007, 1014 (1st Cir.1992); *Colorado Springs Prod. Credit Ass'n v. Farm Credit Admin.*, 967 F.2d 648 (D.C.Cir.1992). Thus, the IOAA's fee-setting standard is not mandated by the takings clause.

7. In the alternative, the Court defers to the DEA's reasonable determination that the 1993 Appropriations Act sets forth a different fee-set-

*Takings Clause*

■ Plaintiffs claim in Count III of their amended complaint that defendants' promulgation and enforcement of its revised registration fee schedule violates the takings clause of the Fifth Amendment.[8] The Court does not have jurisdiction over this claim. 28 U.S.C. § 1491; *Preseault v. ICC,* 494 U.S. 1, 10–13, 110 S.Ct. 914, 921–22, 108 L.Ed.2d 1 (1990). Accordingly, the Court grants summary judgment for defendants on Count III of the amended complaint.

### Conclusion

For the foregoing reasons, the Court grants defendants' motion for summary judgment and denies plaintiffs' motion for summary judgment on Counts I and II of the amended complaint.

ting standard than that of the IOAA. *See Chevron U.S., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

8. This Count also contains an equal protection challenge to the Final Rule, as well as a due process claim. As it is clear that the Final Rule bears a "rational relationship to a legitimate state purpose," the Court finds plaintiffs' equal protection claim meritless. *See City of Dallas v. Stanglin,* 490 U.S. 19, 22–24, 109 S.Ct. 1591, 1594, 104 L.Ed.2d 18 (1989) (quoting *San Antonio Indep. School Dist. v. Rodriguez,* 411 U.S. 1, 42–44, 93 S.Ct. 1278, 1302, 36 L.Ed.2d 16 (1973)). Plaintiffs' due process claim is based on defendants' alleged failure to give notice of the fee increase. Because the Court finds that defendants' notice was adequate, it rejects this challenge as well.