MOORE, Circuit Judge,
dissenting.
The State of Tennessee charges disabled passengers an assessment for the privilege of obtaining a disabled parking placard. Unlike the majority, I believe that, regardless of where the monies are deposited, Tennessee’s assessment clearly constitutes a regulatory fee rather than a tax. I therefore conclude that the Tax Injunction Act presents no bar to federal court jurisdiction, and I respectfully dissent from the majority’s holding to the contrary.
The majority reasons that Tennessee’s assessment is a tax because, pursuant to Tennessee’s statutory scheme, the monies collected from the issuance of disabled parking placards are deposited into general state funds rather than into a special fund earmarked for the administration of the placard program. This heavy reliance on the disposition of the funds obscures the principal inquiry, which “centers on function, requiring an analysis of the purpose and ultimate use of the assessment.” Collins Holding Corp. v. Jasper County, 123 F.3d 797, 800 (4th Cir.1997). It is true that the assessments at issue are deposited into a variety of state funds that benefit the public generally. However, the fact that the assessments are commingled with other monies in a general fund for public benefit does not lead inexorably to the conclusion that the dominant purpose of the statute is revenue raising. “Rather than a question solely of where the money goes, the issue is why the money is taken.” Hager v. City of West Peoria, 84 F.3d 865, 870-71 (7th Cir.1996); see also Hexom v. Oregon Dep’t of Transp., 177 F.3d 1134, 1138 (9th Cir.1999) (“The question, in the long run, is not simply where the money is deposited at some point; it is what the purpose or use of the assessment truly is.”).
In the instant case, there is a connection between the assessment and the costs of the regulatory scheme. First, the evolution of the statutory provision at issue shows that the charge for parking placards is connected to cost. The current lan *617 guage reads: “If the applicant is eligible for a disabled license plate, the placard shall be furnished without charge. If the applicant has not applied for vehicle registration, then the cost of the placard shall be the same as the regular fee for passenger motor vehicles, as provided in § 55-4-111.” Tenn.Code Ann. § 55-21-103 (1998). However, as first enacted, the Disabled Drivers Law of 1975 did not specify an amount to be charged for placards, but provided that “[t]he actual cost of the placard shall be paid by the handicapped driver.” Tenn.Code Ann. § 55-21-103 (1980 Replacement). The fact that the early version of the provision tied the assessment to cost suggests that the purpose of the assessment is regulatory.[1]
Additionally, the plaintiffs point to a fiscal note support form that was prepared by the Division of Title and Registration to comment on the fiscal effect of Senate Bill No. 1831. The bill proposed that the Disabled Drivers Law be amended to provide for the renewal of permanent placards every two years for a fee of $5. J.A. at 56-57 (Irwin Dep.); 85 (Fiscal Note Support Form). The Division of Title and Registration estimated the fiscal impact of the bill to be $204,100 bi-annually. J.A. at 86 (Fiscal Note Support Form). With a charge of $5 per placard, it was estimated that the bill would generate $500,000 in revenue during that same time period. J.A. at 86 (Fiscal Note Support Form). The bill that became law provided for a renewal charge of $3 bi-annually, rather than $5. J.A. at 57 (Irwin Dep.).
The plaintiffs argue that this form shows a correlation between the cost of the renewal program and the revenue generated thereirom. A $5 assessment would have generated $500,000 in revenue bi-annually and resulted in a large revenue surplus. However, the plaintiffs explain that the $3 renewal charge that was eventually enacted into law generates only $300,000 in revenue, essentially “covering] the Division’s cost of administering the program.” Appellant’s Br. at 16. While the correlation is not exact, the fiscal note support form does reveal a relationship between the assessment and the cost of the renewal program.[2] In conjunction with the earlier version of the statute the form suggests that the ultimate purpose of the assessment is to defray the costs of administering the disabled parking placard program.[3]
Tennessee’s assessment for disabled parking placards therefore has all the characteristics of a regulatory fee. First, although Tennessee’s assessment was imposed by the Tennessee legislature, the *618 responsibility for administering and collecting the assessment lies with a regulatory agency, the Department of Safety. Second, the assessment is imposed on only a narrow class of persons. Finally, as I have explained, the assessment is connected to the cost of the program, thus suggesting a regulatory purpose.
At bottom, Tennessee’s assessment is analogous to a license or permit fee, which is a paradigmatic regulatory fee. See National Cable Television Ass’n, Inc. v. United States, 415 U.S. 336, 340-41, 94 S.Ct. 1146, 39 L.Ed.2d 370 (1974) (“Taxation is a legislative function.... A fee, however, is incident to a voluntary act, e.g., a request that a public agency permit an applicant to practice law or medicine or construct a house or run a broadcast station. The public agency performing those services normally may exact a fee for a grant which, presumably, bestows a benefit on the applicant, not shared by other members of society.”). As with a permit fee, Tennessee’s assessment is voluntary and is charged for the privilege of obtaining a benefit. While the State may generate some additional revenue from the program, the program confers a benefit on the disabled passenger different from that enjoyed by the general public. Cf. United States v. River Coal Co., 748 F.2d 1103, 1106 (6th Cir.1984) (holding that mining reclamation fees were taxes, and so non-dischargeable in bankruptcy, by distinguishing reclamation fees from permit fees: “[The reclamation fee] is imposed as an additional charge on operators who have already received permits. Unlike the permit fee, the reclamation fee does not confer a benefit on the operator different from that enjoyed by the general public when environmental conditions are improved. On the contrary, it is an involuntary exaction for a public purpose.... ”).
Because the essential character of Tennessee’s assessment for disabled parking placards is regulatory, I would hold the Tax Injunction Act inapplicable to the plaintiffs’ suit.

. The majority disagrees with this reasoning; it states that, because disabled passengers must pay the same amount for a placard that all persons must pay to register their vehicles, "[d]isabled persons are merely being taxed in the same way that non-disabled persons are being taxed." Ante, at p. 614 n. 5. The majority’s conclusion rests on the premise that the "regular fee for passenger motor vehicles,” Tenn.Code Ann. § 55-21-103 (1998), is a tax within the meaning of the Tax Injunction Act, which is not at all clear.

. We are unfortunately presented with little information regarding the cost of the initial placard issuance program. The State contends that the actual cost of the placard is 45.4 cents. J.A. at 54 (Irwin Dep.). Because the $20.50 assessment significantly exceeds the actual cost of the placard, the State argues that the assessment is best seen as a general revenue raising measure. The majority agrees, stating that "[t]he only evidence in the record regarding any costs associated with the State's disabled parking program is the actual cost of the disabled parking placard." Ante, at p. 613. However, the actual cost of the placard is not the only cost associated with the regulatory program, as is evidenced by the fiscal note support form.

.The majority believes that the fiscal note support form does not support an inference that the monies collected from the renewal program help to defray the program’s cost, explaining that we do not know the reasons why the Tennessee legislature decided to reduce the amount of the assessment from $5 to $3. The legislature’s rationale for reducing the amount of the assessment is, however, immaterial. The important fact is that, as enacted, the amount of revenue collected from the program roughly parallels the cost of the program’s administration, which is suggestive of a regulatory purpose.